813 So.2d 341 (2002)
Leonard W. WALLMUTH, et al.
v.
RAPIDES PARISH SCHOOL BOARD, et al.
Nos. 2001-C-1779, 2001-C-1780.
Supreme Court of Louisiana.
April 3, 2002.
*342 Laura K. Theunissen, Preis, Kraft & Roy, Lafayette, for Applicant (No. 2001-C-1779).
Terry G. Aubin, Wilbert J. Saucier, Jr., Pineville, Bridgett B. DeJean, Raymond L. Brown, Jr., Alexandria, Steven B. Rabalais, Lafayette, Sandra Green (in proper person) for Respondent (No. 2001-C-1779).
Terry G. Aubin, Wilbert J. Saucier, Jr., Pineville, for Applicant (No. 2001-C-1780).
Laura K. Theunissen, Preis, Kraft & Roy, Lafayette, Bridgett B. DeJean, Raymond L. Brown, Jr., Alexandria, Steven B. Rabalais, Lafayette, Sandra Green (in proper person) for Respondent (No. 2001-C-1780).
VICTORY, J.
We granted this writ to determine whether the Rapides Parish School Board (the "School Board") is liable to plaintiffs for injuries suffered by an eighth grade student, Joshua Wallmuth ("Wallmuth"), when he was kicked by another student in the locker room after a physical education class. After reviewing the record and the applicable law, we reverse the judgments of the lower courts and hold that the School Board is not liable for Wallmuth's injuries.

FACTS AND PROCEDURAL HISTORY
Wallmuth's parents filed suit against the School Board and three other students' parents and guardians and their insurance companies, alleging that on April 18, 1996, in the locker room at Jones Street Junior High, two students, Nathaniel Smith and David Zeno, held Wallmuth while another student, Chris Davidson, kicked Wallmuth in the knee, severely injuring him. The claims against the Smiths, their insurer, and the Zenos were tried before a jury. The claims against the School Board and its insurer were tried before the trial court. In addition, the claims against Chris Davidson were presented to the trial court by way of a default judgment proceeding.
At trial, Wallmuth testified that on April 18, 1996, he was in Coach David Brasher's physical education class. On that date, the students were playing volleyball. He testified that Zeno, Smith, and Davidson were on one team and he was on *343 another, that his team was winning, that the other three students were angry about it, and shouted at Wallmuth that they were going to "get [him] after class." He testified that the class continued to play volleyball throughout the rest of the class period until Coach Brasher told them that they had five minutes to go into the locker room and get dressed for their next class.
Wallmuth testified that his locker was in the back of the locker room, in an area that was not visible from the door of the locker room. He testified that as he went into the locker room, he was not concerned for his safety because he thought the threats from the three other students had died down. However, after he reached his locker and started to get dressed, he heard the three boys approach him and say "get him." At that point, he testified that "Zeno ran up behind me and stood on top of the bench and was holding my shoulders and pulling my hair" and that "Smith was standing in front of me with his back against the lockers holding my left arm." He testified that Davidson was just standing there but "then he ran up and kicked me." Wallmuth testified that the three students ran off but then came back and "Chris Davidson asked me what happened and I told him that he had kicked me, and then they all said that they were sorry and asked me if I was going to tell on them." Between 30-60 seconds after he was kicked, Coach Brasher came into the locker room on his regular patrol and found him on the floor.
Wallmuth testified that Coach Brasher was not in the locker room when the incident occurred and that, in fact, Coach Brasher was "hardly ever" in the locker room when the boys were changing clothes. He testified that when the students were dressing out, Coach Brasher spent his time walking between the gym and the locker room, which were connected to each other by a doorway. He further testified that Coach Brasher could not see the area where his locker was located from the locker room door.
Finally, Wallmuth testified that "almost every day," "somebody [was] getting pushed or shoved into lockers, rolled around, thrown around, I mean, hair being pulled, arms twisted" and that Zeno, Smith, and Davidson were almost always involved. He testified that Coach Brasher was never in the locker room when those things were going on, but when Coach Brasher was in the locker room, none of the above occurred and "they would just go and get dressed and leave." He testified that that type of activity was directed at him "about ten times" but he never told Coach Brasher about it because he was scared. He had told Coach Brasher on a couple of occasions that someone else had gotten hurt, but Coach Brasher told him not to worry about it. He testified that he did not tell Coach Brasher about the threats he received on the day of the incident because he thought the other three students had forgotten about it, that it had "died over," and that on other occasions when those students had threatened him, nothing ever happened as a result.
Smith testified that there was no supervision in the locker room. He denied holding Wallmuth while he was kicked and claimed he did not know Davidson was going to kick him. He testified that the scuffle was already taking place when he got back to the lockers and that the kick was sudden and surprising. Zeno testified and admitted that he and Smith were "horseplaying" with Wallmuth for two or three minutes but were not mad at him. Zeno testified that Davidson just ran in, kicked Wallmuth, and said "I told you I was going to get you." He further testified that Davidson had yelled at Wallmuth during the volleyball game that he was *344 going to get him when they got to the locker room but that he never thought Davidson would actually do anything. Zeno testified that Coach Brasher would come in the locker room occasionally but that Coach Brasher had to be three different places at once, the locker room, the gym and the canteen, in order to supervise all the students in the class.
The principal of Jones Street Junior High, Michael Vercher, testified that he did not recall any specific incidents in this physical education class, that he knew of no prior discipline problems concerning Zeno, Smith, or Davidson, and that Coach Brasher received the highest evaluations each year. The discipline records showed that Smith had been disciplined on February 23, 1996, for an incident in the locker room, that Zeno had been disciplined on March 6 and 23, 1996, for violating gym rules and for disrespect of authorities, and that Davidson had prior discipline reports for fighting on October 12, 1994 and January 25, 1995, and for fighting in gym class on January 26, 1996. As a result of the incident, all three students were suspended.
The assistant principal, Lee Dotson, testified that he was never informed of daily fights in this physical education class but did recall receiving calls from parents in certain gym classes.
Wallmuth's mother, Terri Wallmuth, testified that before this incident, she was not aware of any incidents at school involving Joshua or the three defendants.
Coach Brasher testified regarding his usual routine in handling his gym classes. He testified that when he dismissed students from the gym to go into the locker room to get dressed, either before or after class, he would generally stay in the gym until the last student had gone into the locker room, then he would walk through the locker room to make sure "everybody was doing what they were supposed to do." He also testified that he would walk to the back of the locker room to make sure that a door located at the back of the locker room was secure. He would then stand by the door between the locker room and the gym until all the students were back in the gym. He admitted that he could not see the area of the locker room where this incident took place from that position. However, when questioned about how he first learned about the specific incident involved in this case, he testified that "I was making my normal walk to the backdoor and saw some students moving around the corner of some lockers in a way that was, I thought, unusual ... so I went back to investigate, and when I got to where Josh's locker was I saw him sitting on the bench." He testified that there had been five fights that year in the gym or locker area, none of which resulted in serious injury, but that he could not have done anything to prevent this incident without prior knowledge of the problem.
The plaintiffs also presented several other witnesses who were students in other physical education classes. Brian Coughlin and Jeremy Jones, seventh grade students in another of Coach Brasher's physical education classes, testified that there were fights in the locker room everyday but that they never told any teachers about it. Coughlin testified that he was "jumped" by three other students and received a bruise. He told his mother about it, and she testified that she went to the School Board, reported the incident, and was told that the problem would be addressed. Mrs. Coughlin testified that the principal called her and told her he was not aware of the problem and asked if her son would report any further incidents to him. Jeremy Jones testified that he was "jumped" by five or six guys in the back locker area, but he did not report the *345 incident because he was not really worried about it. He did transfer to a different school after this incident, partly because of the incident and partly because his grades were dropping.
Another student, Tyler Saucier, who was a seventh grader in Coach Barbara Joubert's class, testified that every day students were whipping others with belts and that he reported this to Coach Joubert seven or eight times and she said she would take care of it. He did not tell his mother about any of this because he thought it was just horseplay.
At the conclusion of the trial, the jury returned a verdict in favor of Smith and Zeno, finding that neither was at fault in causing Wallmuth's injuries.[1] Regarding Davidson, the trial court refused to confirm a default judgment against his mother because there was no evidence which showed he lived with his mother at the time of the incident, and there was no way to show who was the proper person to sue. However, the trial court found that the School Board was 100% liable for Wallmuth's injuries under La. C.C. art. 2315, finding that Coach Brasher failed to supervise the students and this was a cause-infact of the injuries. The trial court refused to apportion fault to any of the students involved in the incident because of the extent to which it found the School Board's behavior fell below the requisite standard of care, finding that the atmosphere of roughhousing and the lack of supervision invited the incident to occur. The court of appeal affirmed the judgment in part and reversed in part, finding that the School Board was liable under La. C.C. art. 2320 for failing to adequately supervise the locker room, but finding that the trial court committed legal error by failing to quantify the fault of the students who attacked Wallmuth. Wallmuth v. Rapides Parish School Board, 01-0042 (La.App. 3 Cir. 5/16/01) 802 So.2d 28. Thus, after a de novo review, the court of appeal apportioned 70% of the fault to the School Board and 30% of the fault to Davidson. Id. Plaintiffs filed a writ application with this Court, claiming that the court of appeal erred in assigning only 70% of the liability to the School Board because under La. C.C. art. 2320, the School Board is also vicariously liable for Davidson's fault, which would result in an assessment of 100% liability against the School Board. The School Board filed a writ application alleging that the court of appeal erred in finding liability on its part for failure to supervise, and, alternatively, erred in not assigning the majority of fault to Davidson, the intentional tortfeasor. We granted and consolidated both writ applications. Wallmuth v. Rapides Parish School Board, 01-1779, 01-1780 (La.10/12/01) 799 So.2d 488.

DISCUSSION
We will first address the issue presented in the School Board's application, i.e., whether the lower courts erred in finding independent liability on its part for failure to supervise the students during this physical education class.[2] The trial *346 court found that the School Board was 100% liable for Wallmuth's injuries using the duty-risk analysis of La. C.C. art. 2315,[3] finding that "the conduct of the School Board in failing to supervise the students was a cause-in-fact of Joshua Wallmuth's injuries." On the other hand, the court of appeal found that the School Board was 70% liable for Wallmuth's injuries under La. C.C. art. 2320, which provides, in part, as follows:
Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the ... teachers or artisans, might have prevented the act which caused the damage, and have not done it.
The court of appeal set out what we believe is the correct standard of liability regarding the liability of a school board for the actions of its students under La. C.C. art. 2320:
A school board, through its agents and teachers, owes a duty of reasonable supervision over students. La. Civ.Code art. 2320; Adams v. Caddo Parish School Bd., 25,370 (La.App. 2 Cir. 1/19/94), 631 So.2d 70, writ denied, 94,684 (La.4/29/94), 637 So.2d 466. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. Jackson v. Colvin, 98-182 (La.App. 3 Cir. 12/23/98), 732 So.2d 530, writ denied, 99-228 (La.3/19/99), 740 So.2d 117. This duty does not make the school board the insurer of the safety of the children. Id. Constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision. Adams, 631 So.2d 70.
Before liability can be imposed upon a school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident. Id. "Injury from horseplay between discerning students which, at some stage may pose an unreasonable risk of harm to the participants, does not automatically and of itself render the supervising authority liable." Henix v. George, 465 So.2d 906, 910 (La.App. 2 Cir.1985). Furthermore, before a school board can be found to have breached the duty to adequately supervise the safety of students, the risk of unreasonable injury must be foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised. Id.

Wallmuth, Slip Op. at p. 3, 802 So.2d at 32.
The court of appeal found that the School Board was liable for Wallmuth's injuries because, with knowledge that there had been fighting in the locker room, the School Board failed to notify Coach Brasher that he needed to exercise more *347 supervision over that area. Id. at p. 6, 802 So.2d at 33. Further, the court of appeal found that "when there was supervision, there were no problems," apparently addressing the requirement that the risk of unreasonable injury would have been preventable if a requisite degree of supervision had been exercised.
Essentially, the analysis of the School Board's independent liability is the same under both La. C.C. art. 2315 and 2320, as liability under each statute requires that the School Board breach its duty of reasonable supervision over its students. The causation element is satisfied under La. C.C. art. 2315 if it is proven that the breach was the cause-in-fact of the plaintiffs injuries, which in a breach of supervision case can only be satisfied if it is proven that "but for" the lack of reasonable supervision, plaintiffs injuries would have been prevented, which is similar to the "prevention" element of La. C.C. art. 2320. Thus, Louisiana courts appear to have interchangeably analyzed the liability of a school board for damages caused by its students under both La. C.C. arts. 2315 and 2320.
In reviewing the jurisprudence throughout this state, we find that the vast majority of courts have found no liability on the part of school boards for fights occurring between students, or accidents at school, either because the school board did not breach its duty of reasonable supervision, or because the school board or school personnel could not have prevented the incident from occurring. See e.g., Adams, supra (finding no liability on the part of the school board under La. C.C. art 2320, because a second fight between two unsupervised high school girls waiting in the principal's office to be disciplined was unforeseeable and thus not preventable); Hunter v. Caddo Parish School Bd., 627 So.2d 772 (La.App. 2 Cir.1993) (school board not liable (though not citing any particular statute) for injuries to young student who fell from climbing tower because school exercised reasonable supervision over children, and the fall resulted from impulsive act of student which could not have been prevented); Coleman v. Joyner, 593 So.2d 451 (La.App. 2 Cir.), writ denied, 595 So.2d 657 (La.1992) (school board not liable (though not citing any particular statute) where student with one prior disciplinary complaint struck another suddenly and without warning); Oast v. Lafayette Parish School Bd., 591 So.2d 1257 (La.App. 3 Cir.1991) (school board not liable under La. C.C. art. 2320, where student wrestler spontaneously and unexpectedly threw a chair after losing a match and injured a parent as there was no causal relationship between a lack of supervision and the throwing of the chair); Brooks v. Orleans Parish School Bd., 560 So.2d 633 (La.App. 4 Cir.1990) (school board not liable where five-year-old student was pushed from a slide); Narcisse v. Continental Ins. Co., 419 So.2d 13 (La. App. 3 Cir.1982) (school board not liable under general negligence theories nor La. C.C. art. 2320, where student accidently shut a door on another student's finger while the teacher was out of the classroom, finding that absent a "special, dangerous condition," the school board has no duty to constantly supervise); Batiste v. Iberia Parish School Bd., 401 So.2d 1224 (La.App. 3 Cir.), writ denied, 405 So.2d 531 (La.1981) (school board not liable (though not citing any particular statute) where one student stabbed another in the eye with a pen following a game on the playground because the incident was not foreseeable); Collins v. Wilson, 331 So.2d 603 (La.App. 1 Cir.), writ denied, 334 So.2d 428 (La.1976) (school board not liable under general negligence theories nor La. C.C. art. 2320, where one student hit another with a brick in brickmasonry *348 class, even though the student had threatened, and fought with, the other student in class just prior to the incident); Bourgeois v. Indemnity Ins. Co., 60 So.2d 718 (La.App.Orl.1952) (school board not liable where student moved a bench causing parent to trip over it because the fact that it "was possible to have prevented the moving of the bench had a teacher been present at that exact spot, does not mean that the fact that no teacher was at that exact spot constituted negligence"). Most of the above cases focused on the spontaneous nature of the students' actions, that would not have been preventable absent constant supervision.
Three of the cases where liability has been imposed on the school board involved fights between students after disembarking a school bus or an RTA bus, where either the school board was warned that a fight was likely to break out between certain students, yet did not inform the bus driver, or the bus driver was warned by a student that a another student was threatening to beat her up, yet in each case the bus driver let the students out at the same time and drove off while a fight broke out in view of the driver. Frazer v. St. Tammany Parish School Bd., 99-2017 (La. App. 1 Cir. 12/22/00), 774 So.2d 1227, writ denied, 01-0233 (La.3/23/01), 787 So.2d 1001;[4]Bell v. Ayio, supra;[5]Wijngaarde v. Parents of Guy, 97-2064 (La.App. 4 Cir. 9/2/98), 720 So.2d 6, writs denied, 98-3152, 98-3144, 98-3162 (La.2/12/99), 738 So.2d 574, 575.[6] In another case where liability was imposed on the school board under La. C.C. art. 2320, a second grade student suffered a sexual assault by a fellow classmate while a teacher was actually in the classroom supervising the class. Vaughn v. Orleans Parish School Bd., 00-0556 (La. App. 4 Cir. 11/28/01) 802 So.2d 967.[7]
In this case, the conduct by Davidson was unforeseeable and, by all accounts, happened suddenly and without warning. There had been no prior history of any violence between Wallmuth and the three other students, and Wallmuth testified that he thought Davidson and the *349 other students had cooled off after their threats to "get him" when they got back to the locker room. Wallmuth felt that he was in no danger of harm when he entered the locker room to begin changing clothes, and therefore, did not notify Coach Brasher that these students posed a danger to him. In addition, Zeno and Smith testified that they did not know Davidson was going to kick Wallmuth and that it happened suddenly and without warning. Because this incident was not foreseeable to Wallmuth or any of the other students involved, there is no way that Coach Brasher could have foreseen the incident and prevented it.
Therefore, we find that the lower courts were clearly wrong in finding any independent liability on the part of the School Board under either La. C.C. arts. 2315 or 2320. The court of appeal erred in finding that the School Board and the school were aware of a "pattern of rough housing" in the locker room and should have taken action to "insure that there was increased supervision in the locker room so as to prevent future skirmishes." The only notification the school or the School Board received regarding "rough housing" in the locker room was from a parent of one student who was not even in the same physical education class as Wallmuth and which did not involve any of these particular students. Because neither Coach Brasher, nor the School Board, had any knowledge of any problems in the locker room involving students in this physical education class, there was no more reason for Coach Brasher to have been in the back of the locker room supervising these students than there was for him to be in the gym or at the door to the locker room supervising any of the other students. Thus, no independent fault is attributable to the School Board.
The plaintiffs also argue that the School Board is vicariously liable under La. C.C. art. 2320 for the actions of its student, Chris Davidson. However, as seen from the above discussion, La. C.C. art. 2320 is not a true "vicarious liability" statute, as it requires independent fault on the part of the School Board in that the School Board is only liable for damages caused by students under their supervision when the school board, the teacher, or other school authorities "might have prevented the act which caused the damages and have not done so." La. C.C. art. 2320;[8]see also Adams, supra at 75-76. Because of the spontaneous nature and unforeseability of Davidson's actions, neither the School Board nor Coach Brasher could have foreseen the incident, nor have prevented it, exercising a reasonable degree of supervision. Thus, just as the School Board is not independently liable for its own negligence under either La. C.C. arts. 2315 or 2320, it is not liable for the actions of its student under La. C.C. art. 2320.

CONCLUSION
Constant supervision of all students is not possible, nor is it required, for educators *350 to discharge their duty to provide adequate supervision. The School Board is not liable in this case under either La. C.C. art. 2315 or art. 2320 for failing to adequately supervise this physical education class, because the risk that one student would strike and seriously injure another student in the back of the locker room was not foreseeable, nor constructively or actually known. Not even the student who was injured thought that he was at risk in the locker room, and no one notified Coach Brasher, or anyone else at the school or the School Board, that Davidson posed a threat to anyone else, or that the students in this physical education class routinely engaged in rough housing in the back of the locker room. Therefore, neither the School Board nor Coach Brasher acted unreasonably by failing to constantly supervise the students changing clothes in the back of the locker room, rather than patrolling the entire area, including the gym and the locker room. Similarly, the School Board is not liable for Davidson's actions under La. C.C. art. 2320 because it could not have, exercising reasonable supervision, prevented this incident from occurring.

DECREE
For the reasons stated herein, the judgments of the lower courts are reversed and judgment is rendered in favor of the School Board, dismissing plaintiffs' claims against it.
REVERSED AND RENDERED.
JOHNSON, J., concurs.
WEIMER, J., dissents with reasons.
WEIMER, J., dissenting.
I agree with much of the majority opinion, however, I respectfully dissent from the finding that there is no liability on the part of the school board. There is a factual basis for finding that the school board, through its employees, was notified of the physical confrontations in the locker room and did not take adequate steps to stop the violence.
Significantly, on a couple of occasions the plaintiff told Coach Brasher that someone had gotten hurt as a result of locker room violence, but the coach advised him not to worry about it. The coach testified that there had been five fights that year in the gym or locker area. Nathaniel Smith testified there was no supervision in the locker room. Smith, David Zeno, and Chris Davidson all had prior discipline reports involving incidents in the locker room or the gym. The assistant principal did recall receiving calls from parents regarding daily fights in certain gym classes although he testified that he was never informed of daily fights in the physical education class in which the plaintiff was injured. Seventh graders in another of Coach Brasher's physical education classes testified about fights in the locker room every day. After one of these students was struck in such an incident, his mother complained to the school board and was advised the problem would be addressed.
Although this court properly applied a de novo review, noteworthy is the finding of the trial judge to whom the liability of the school board was tried: "By failing to adequately supervise, the incident complained of here, was allowed to happen, and in fact, was invited to happen."
While there was no duty to post a coach in the locker room constantly, there was a duty to adequately respond to complaints of students and parents. The school apparently did not take minimal steps to end the violence. The kick inflicted in this incident is not so far removed from the types of actions about which the school was warned such that the kick was unforeseeable.
*351 The particular kick which injured the plaintiff may have been unexpected, but the atmosphere of violence which was tolerated made some type of injury inevitable. While in no way condoning the behavior of the student who inflicted the injury on the plaintiff, under the facts and circumstances of this case, I would apportion fault 80% to the intentional actor and 20% to the school board.
NOTES
[1] The jury instructions provided that in order to find Zeno or Smith liable, the jury had to find that they were conspirators with Davidson in causing the injuries, and even if their actions made it easier for someone to strike the blow, that did not make them conspirators.
[2] Davidson, the intentional tortfeasor, was clearly at fault in causing Wallmuth's injuries and the refusal of the trial court to assess him with fault was legal error. "Where the trial court commits legal error by applying an incorrect legal standard, this court is required to determine the facts de novo from the entire record and render a decision on the merits." Bell v. Ayio, 97-534 (La.App. 1 Cir. 11/13/98), 731 So.2d 893, writ denied, 98-3115 (La.2/5/99), 738 So.2d 7. Thus, as did the court of appeal, we will conduct a de novo review of fault.
[3] The trial court utilized the duty-risk analysis under La. C.C. art. 2315 as follows:

(1) Was the conduct of which the petitioner complains a cause in fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Whether the requisite duties were breached?
(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
(5) Were actual damages sustained?
[4] In Frazer, a student's mother contacted the assistant principal to inform him that a group of students had been harassing her daughter on the school bus everyday, and had been threatening her and her friend, "Andy." However, the school never notified the bus driver of any impending problems between any of the students on the bus. On the day in question, several unauthorized students boarded the bus to witness the fight and the students were yelling threats at Andy. When Andy got off the bus, a larger number of students than usual also got off and Andy and a friend were beaten up, in view of the bus driver who drove off instead of taking preventative measures. The court assigned 20% liability to the school board. 774 So.2d 1227.
[5] In Bell, a middle school student warned the bus driver that another student was threatening to beat her up, but instead of taking any preventative action, the bus driver put both students off the bus and left them there unsupervised while he moved his bus, during which time the student was in fact beat up. The court assigned 15% liability to the school board for the bus driver's negligent supervision.
[6] In Wijngaarde, two groups of students were involved in verbal altercations throughout the day, and gave statements to the school security counselor about the incidents. After school, both groups were allowed to leave school at the same time and boarded the same RTA bus, where the verbal altercations continued. After the bus driver threatened to call the police, one group exited the bus and the other group claims they were forced off the bus by the driver, and immediately thereafter, one student hit the other. Because the court of appeal found that the causal relationship between the school board's failure to insure that the students would be separated and the injury was "tenuous," the court only assigned 10% liability to the school board.
[7] A writ application is pending before this Court in Vaughn.
[8] Although the language of La. C.C. art. 2320 technically applies as well to the employer-employee relationship, Louisiana courts have not given effect to the "might have prevented" language since 1906. See Weaver v. W.L. Goulden Logging Co., 116 La. 468, 40 So. 798 (1906). The judicial interpretation of La. C.C. art. 2320 as it applies to employers and employees has been codified by La. R.S. 9:3921 (1991), which provides in part: "notwithstanding any provision in Title III of Code Book III of Title 9 of La.Rev.Stat. of 1950 to the contrary, every master or employer is answerable for the damage occasioned by his servant or employee in the exercise of the functions in which they are employed." No such treatment has been given to the teacher-student relationship outside of the strict language of La. C.C. art. 2320.