848 So.2d 754 (2003)
James COUTEE and Cynthia Coutee, individually and administrators of the Estate of their Minor Child, Brandon Coutee
v.
GLADE MIDDLE SCHOOL and St. John the Baptist Parish School Board.
No. 03-CA-128.
Court of Appeal of Louisiana, Fifth Circuit.
June 3, 2003.
*755 Janet Moulton, Janet Moulton and Associates, Metairie, LA, for plaintiff-appellee.
*756 William D. O'Regan III, Laplace, LA, for defendant-appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
Brandon Coutee ("Brandon"), a seventh grader at Glade Middle School, was injured when another student, Dow Anderson ("Dow"), punched him in the jaw causing a fractured mandible. At the time of the incident, Brandon and Dow were in the gymnasium at Glade Middle School ("the School"). Brandon's parents, on behalf of Brandon, sued Glade Middle School and St. John the Baptist Parish School Board ("the School Board"). After trial, the trial court awarded general damages of $55,000 and medicals of $2,522.79. The trial court also assessed fault at 50% to Dow, 15% to Brandon and 35% to the School and the School Board. Based on La. C.C. art. 2323(C) and the reasoning of the Fourth Circuit in Wijngaarde v. Parents of Guy, 97-2064 (La.App. 4 Cir. 9/2/98), 720 So.2d 6, the trial court assessed Brandon's 15% fault to Dow, making his total fault 65%, since the plaintiff's recovery cannot be reduced because of victim fault when the injury resulted from an intentional tort.
The School Board and the School now appeal this judgment arguing that the trial court erred in awarding general and medical damages, the trial court erred in assessing the School Board and the School with 35% fault, and the trial court awarded excessive damages. For the reasons which follow, we amend the trial court's judgment and reallocate the School and the School Board with 15% fault and reallocate 35% fault to Brandon. We also amend the trial court's judgment to decrease the general damage award to $35,000.
Following trial, the trial court found that the School had developed a routine which provided that students on their way to gym class were to stand in line in the hallway until time to go into the locker room to change clothes. There were two teachers assigned to monitor these students. One teacher was to be in the front of the line and one teacher in the back of the line. According to the acting principal, Robert Schaff, no student was to be in the gym unsupervised.
At the time of the incident, approximately seven students were in the gym unsupervised. The trial court found that it was immaterial whether or not one of the teachers monitoring the students in line had allowed Brandon and other students to go into the gym on that day. The trial court felt that the bottom line was that the students were unsupervised. The trial court reasoned that if the teachers knew the students were in the gym unsupervised, then they were knowingly allowing a violation to occur. The trial court further reasoned that if the teachers did not know the students were in the gym, they should have known when approximately seven students were in a place they were not supposed to be. As a result, the trial court found the School and the School Board to be 35% at fault in the cause of the incident.
A School Board, through its agents and teachers, owes a duty of reasonable supervision over students. La. C.C. art. 2320; Wallmuth v. Rapides Parish School Board, 01-C-1779 (La.4/3/02), 813 So.2d 341, 346, citing Adams v. Caddo Parish School Board, 25,370 (La.App. 2 Cir. 1/19/94), 631 So.2d 70, writ denied, 94-684 (La.4/29/94), 637 So.2d 466. The supervision required is reasonable competent supervision appropriate to the age of the children and the circumstances. Wallmuth *757 at 346, citing Jackson v. Colvin, 98-182 (La.App. 3 Cir. 12/23/98), 732 So.2d 530, writ denied, 99-228 (La.3/19/99), 740 So.2d 117. This duty does not make the school board the insurer of the safety of the children. Id. Constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision. Wallmuth at 346, citing Adams, 631 So.2d 70.
Before liability can be imposed upon a school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident. Id. Furthermore, before a school board can be found to have breached the duty to adequately supervise the safety of the students, the risk of unreasonable injury must be foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised. Id.
In this case, two teachers had been assigned to monitor the students in line for gym class in the hallway. According to the testimony of one student, there were approximately 50-60 students in line in the hallway. Neither teacher who was assigned to the supervision of these students testified at trial. However, it appears that the teachers were watching the students in the hallway. No teacher was independently assigned to monitor the gym while the students were in line in the hallway, because no students were supposed to be in the gym at that time.
Brandon testified that one of the teachers monitoring the students in the hallway told him to go into the gym and wait for them. Principal Schaff testified that no one had told him that one of the teachers told Brandon to go into the gym by himself. He also testified that he had not seen any statements taken from any witnesses that indicated Brandon had been told to go into the gym.
Brandon testified that he was hit by Dow right after he got into the gym and walked to the bleachers. Dow was supposed to be in another class that period and left the gym immediately after hitting Brandon. Dow's teacher for that class period reported that Dow was about five minutes late for class.
Dow violated the school's policies and actually forged a hall pass in order to skip the beginning of his class to go to the gym and hit Brandon. Brandon knew that according to the school's policies, he was not supposed to be in the gym without a teacher. Both students obviously violated school policy when they chose to be in the gym at that time.
We find that the School and the School Board did not provide reasonable supervision over its students. Two teachers were assigned to monitor the students who were going to gym class, yet there were approximately seven students in the gym unsupervised at the time of the incident.
We further find that the School and the School Board were negligent in providing supervision of the students. Principal Schaff implemented policies regarding movement of students within the school from one class to another in order for there to be supervision of the students at all times and to stop students from skipping classes. The two teachers assigned to monitor the gym students were allegedly watching the students in line in the hallway when the incident occurred. However, approximately seven students managed to get past these two teachers and enter the gym. Dow forged a hall pass and skipped the first five minutes of his class in order to go to the gym. These teachers were obviously negligent in supervising *758 the students and allowing these violations to occur.
In addition, we find a causal connection between the lack of supervision and the accident and find that the risk of this injury was foreseeable. Brandon testified that Dow hit him right after he entered the gym and approached the bleachers. Dow left immediately after and a teacher approached Brandon as Dow left. If a teacher had been present in the gym supervising the students, Dow might not have hit Brandon. In addition, had the teacher supervised the students appropriately and not allowed Brandon to go into the gym, this incident would not have occurred. As a result, we find there is a connection between the lack of supervision and the accident and find that this incident was foreseeable. It is also likely that a teacher, present in the gym, could have prevented this incident from occurring.
Under the standards set forth in Wallmuth, we find that the plaintiffs proved that the School and the School Board were negligent in providing supervision of the students and the plaintiffs proved a causal connection between the lack of supervision and the accident. However, we find the trial court's assessment of 35% fault to the School and the School Board to be manifestly erroneous. Even though the School and the School Board were negligent in providing supervision of the students, the incident would not have occurred at all if Brandon had not violated school policy by going into the gym and Dow had not violated school policy by skipping the first five minutes of his class and going to the gym. Therefore, we amend the trial court's judgment and find the School and the School Board to be 15% at fault and Brandon to be 35% at fault in the cause of this incident. We agree with the trial court's assessment of 50% fault to Dow. We also agree with the trial court's assessment of Brandon's fault to Dow. The injury resulted from an intentional tort and according to La. C.C. art. 2323(C) and Wijngaarde v. Parents of Guy, supra, the plaintiff's recovery cannot be reduced because of victim fault.
As a result of this incident, Brandon suffered a broken jaw. The trial court found that he was taken to the emergency room that day by his mother. He had out-patient surgery the next day and his mouth was wired shut. He was placed on a restrictive diet and had to eat through a straw. His jaw remained wired shut and he required medical treatment for approximately two months. Our review of the record confirms these facts. Brandon's mother also testified at trial that he was depressed, in pain and his grades had dropped. Before the incident, Brandon played the horn, but after, he was unable to blow the horn. He was also not allowed to play contact sports. Brandon's mother also testified that he was teased by students and threatened by Dow's friends.
On appeal, the defendants argue that the trial court erred in awarding general and medical related damages and erred in awarding excessive damages. They argue that there was no basis for the award of $55,000.00 in general damages and that the award is excessive. We find that the plaintiffs did prove damages based upon the medical reports presented at trial and the testimony of Brandon's mother. However, based on the testimony and evidence from trial, we find the trial court's award to be erroneous. While we find the plaintiffs are entitled to damages, we find the trial court's award to be too high.
In Babb v. Boney, 30,443 (La.App. 2 Cir. 4/08/98), 710 So.2d 1132, the plaintiff sustained injuries to his face when the defendant hit him during a fight. The plaintiff suffered a broken nose and a broken jaw. *759 The plaintiff was hospitalized for eight days and underwent surgery to repair his jaw, as well as, two re-constructive surgeries to repair his nose. His jaw was wired shut for six weeks and he could not eat solid foods. A jury awarded the plaintiff $10,000 in general damages and $26,000 for medical expenses. The Second Circuit found that the jury had abused its discretion by only awarding $10,000 for general damages. The court reviewed similar cases and found that the lowest a reasonable jury could award to the plaintiff was $20,000. The court also noted that based on its review of similar cases, the general damage awards for similar injuries outside of the context of a battery have been significantly greater.
In Winstead v. Watson, 19,641 (La.App. 2 Cir. 05/04/88), 528 So.2d 691, the Second Circuit found that the lowest amount the trial court could have awarded to the plaintiff for a fractured jaw, memory loss and a concussion was $10,000. In Winstead, the plaintiff was struck by the defendant and suffered two fractures of the lower jaw, memory loss, dizziness, nausea, severe weakness, multiple tooth loss and minor lacerations around the mouth. The plaintiff was awarded $5,192.31 for medical expenses. The trial court awarded $5,000 in general damages, but the Second Circuit found that the trial court abused its discretion and increased the award to $10,000.
In this case, we find the trial court abused its discretion by awarding $55,000 to the plaintiffs. Brandon's injuries are similar to those in the cases listed above. He suffered a broken jaw that required outpatient surgery and he received medical treatment for two months. Brandon was placed on a restricted diet and could not play the horn or participate in contact sports. In addition, his mother testified that he was depressed and was teased because of his condition. Therefore, we find that $35,000 is the most a reasonable trier of fact could award.
In accordance with the above, we amend the trial court's judgment and reallocate 15% fault to the School and the School Board and 35% fault to Brandon. We also amend the trial court's judgment and decrease the general damage award to $35,000. In all other respects, the judgment is affirmed.
AMENDED; AS AMENDED, AFFIRMED.