860 So.2d 98 (2003)
Hinda Rain KATZ, as Natural Tutrix of Her Minor Son, Noah B. Katz,
v.
ST. JOHN The BAPTIST PARISH SCHOOL BOARD.
No. 03-CA-462.
Court of Appeal of Louisiana, Fifth Circuit.
October 15, 2003.
*99 Samuel J. Accardo, Jr., Accardo Law Firm, P.L.C., LaPlace, LA, for Plaintiff-Appellant, Hinda Rain Katz, as natural Tutrix of her Minor Son, Noah B. Katz.
Dennis J. Phayer, Burglass & Tankersley, L.L.C., Metairie, LA, for Defendant-Appellee, St. John The Baptist Parish School Board.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
The plaintiff appeals a summary judgment dismissing her claims against a school board arising from the sexual assault of her young son by other students in an elementary school restroom. We reverse and remand.
Hinda Rain Katz, as tutrix of her minor son Noah B. Katz, filed suit against the St. John the Baptist Parish School Board, alleging that her son was a kindergarten student at East St. John Elementary School in Reserve on February 25, 2000. On that date the teacher, Kim Smith, allowed Noah to leave the classroom and make an unsupervised visit to the restroom in the company of three other male kindergarten students. While in the restroom the other three boys sexually assaulted Noah by pulling his pants down, attempting to perform anal intercourse in him, and forcing him to perform "sexually explicit oral behavior" with them.
The plaintiff asserted that as a result of the incident, Noah sustained physical pain and suffering, severe and debilitating emotional distress, post-traumatic stress disorder with hospitalization, loss of enjoyment of life, medical expenses including hospitalization and medication, and lost time from school.
The plaintiff alleged that prior to the incident, Noah was a healthy, happy and stable six-and-a-half year old child, with no history of previous psychological incident or past injury. Since the February 2000 incident, however, he has become aggressive, displays psychotic behavior, and experiences sleep deprivation resulting from severely disturbing nightmares caused by the incident. In addition, he now takes a medication that causes side effects that include drowsiness, dizziness, nausea, fatigue, and difficulty concentrating.
The plaintiff asserted that the School Board is liable for negligence in failing to provide supervision of its minor students of tender age, failing to provide adequate supervision of her son, allowing four minor boys of tender age to leave a classroom and attend the restroom while unsupervised, failing to implement a policy with regard to student "hall passes," failing to adequately train or instruct its teachers and other employees, and failing to implement adequate and safe restroom policies.
*100 In addition the plaintiff asserts the School Board is liable because it failed, ignored and refused to remove Noah from the kindergarten class, despite repeated requests of his mother and grandmother that he be placed in a different class. The plaintiff states that Noah suffered severe distress and continued emotional and psychological damage by being forced to remain in the presence of the three other boys.
The plaintiff also alleges the School Board is liable because the principal of East St. John Elementary School, in a letter dated four days after the incident, admitted that the incident occurred. That letter was forwarded to the parents of the other boys. However, the plaintiff asserts, the letter indicated that Noah was a "participant" in the sexual conduct, which the plaintiff asserts caused additional harm to Noah because the school refused and failed to take any action in the case, "either disciplinary or proactive."
In its answer, the defendant denied the allegations relating to the occurrence of the sexual assault and affirmatively pleaded that any damages were caused solely through the plaintiff's minor child's own fault. Alternatively, the defendant asserted the doctrines of contributory negligence and comparative fault, fault of third persons, and failure to mitigate damages. The defendant filed a third-party demand against the parents of the other children involved in the incident.
The School Board subsequently filed a motion for summary judgment, asserting it had no liability for the incident because neither the kindergarten teacher nor the principal of East St. John Elementary was negligent. The defendant attached the affidavits of the teacher, Kim Smith, and the principal, Jerry "Texx" Galloway.
In the affidavits Smith and Galloway each stated that prior to the incident of February 25, 2000 involving Noah and the other three students, the affiant had neither personal/first-hand knowledge nor second-hand knowledge that any of the four boys involved in the incident had ever given any indication, through word or action, that he was inclined, predisposed, curious about, or even aware of the concept and act of anal intercourse, whether voluntary or involuntary. Similarly, prior to this incident they had neither first-hand nor second-hand knowledge regarding any other elementary school students, whether in kindergarten or any other elementary school grade, at East St. John Elementary or at any other elementary school in the St. John school system attempting to engage in acts of attempted anal intercourse, whether voluntary or involuntary.
In addition, Smith and Galloway both stated that the four boys involved were gone from the kindergarten class on a restroom break for less than five minutes before Smith sent a fifth boy down to the restroom to check on them and that the restroom was located approximately 13 steps (roughly 39 feet) from the kindergarten classroom. Therefore, the defendant asserted, the claims against it should be dismissed.
In opposition, the plaintiff cited the deposition testimony of Smith that she had previously been assaulted by a fourth-grader at the school, that at least once a month there were incidents of students assaulting other students at the school, and that she is personally aware of other teachers who had been assaulted by students at the school. The plaintiff argued that Smith's testimony showed it was foreseeable that four young children allowed to attend a restroom alone were more likely to "play and get in trouble." Further, plaintiff asserts that the teacher's and principal's actions subsequent to the incident were grossly negligent, in that the *101 failure to transfer Noah to another kindergarten class caused him to suffer trauma by remaining in the presence of the three boys. In addition, the plaintiff alleged that Smith threatened the children with calling the police regarding the incident, which further traumatized Noah, who became distraught when he later saw police cars at the school.
In granting summary judgment the trial court stated:
In the present case, the conduct by the children involved in the incident was unforeseeable. There had been no evidence that would cause the teacher nor any other school employee to believe that this sort of activity would occur. Additionally, there was no prior history of this type of behavior occurring between the students and no evidence to suggest that this type of behavior was likely to occur. Therefore, when an incident of this nature results from an impulsive act which could not be prevented or is of a spontaneous nature that would not have been preventable absent constant supervision, a school board is not held to be liable.
Additionally, there was no proof that the school board had either constructive or actual knowledge of the instant behavior. In this case, the conduct of the three 5-year-olds was unforeseeable and, by all accounts, happened suddenly and without warning.
Likewise, the school board is not independently liable under either La.C.C. articles 2315 or 2320. The school board and school were not aware of a pattern of deviant sexual behavior on the part of the five-year-olds. Because of the spontaneous nature and unforeseeability of the children's actions, neither the School Board nor the teacher could have foreseen the incident nor have prevented it, exercising a reasonable degree of supervision.
On appeal, the plaintiff contends the trial court was manifestly erroneous in finding there are no genuine issues of material fact, in finding that there was competent supervision of the minor children based on the record in this case, in finding that the incident and risk of unreasonable injury were not foreseeable, and in failing to consider and address whether genuine issues of material fact exist as to whether the defendant's actions subsequent to this incident were negligent in causing damage to the plaintiff.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B).
Wallmuth v. Rapides Parish School Board, 01-1779 (La.04/03/02), 813 So.2d 341, is the Louisiana Supreme Court's most recent pronouncement on the liability of school boards for injuries to students on school property. The court adopted the court of appeal's statement of the liability standard:
A school board, through its agents and teachers, owes a duty of reasonable supervision over students. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. This duty does not make the school board the insurer of the safety of the children. Constant supervision of all *102 students is not possible nor required for educators to discharge their duty to provide adequate supervision.
Before liability can be imposed upon a school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident. "Injury from horseplay between discerning students which, at some stage may pose an unreasonable risk of harm to the participants, does not automatically and of itself render the supervising authority liable." Furthermore, before a school board can be found to have breached the duty to adequately supervise the safety of students, the risk of unreasonable injury must be foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised. [Citations omitted.]
01-1779 at p. 8, 813 So.2d at 346.
In Wallmuth the court found that the defendant school board was not liable because the attack on the plaintiff student by other students was spontaneous and unforeseeable, so that neither the school board nor the supervising faculty member could have foreseen the incident or prevented it while exercising a reasonable degree of supervision. 01-1779 at p. 13, 813 So.2d at 349.
In Vaughn v. Orleans Parish Sch. Bd., 01-556 (La.App. 4 Cir.11/28/02), 802 So.2d 967, writ denied, 02-0005 (La.6/7/02), 818 So.2d 773, a second-grade student was sexually assaulted by another student in the classroom while the teacher supervised the class. The trial court found that the teacher had negligently supervised her students and awarded damages. The court of appeal affirmed, stating, "Regardless of her presence or absence, a sexual assault occurred in her classroom while she was ostensibly in charge of these grade school children. Between the threats and the assault, this egregious misconduct constituted behavior that Thompson, a self-described experienced teacher, had time and opportunity to notice and prevent." The supreme court denied writs.
This Court recently upheld a trial court's finding of liability against the St. John the Baptist School Board in another case. In Coutee v. Glade Middle School, 03-128 (La.App. 5 Cir.6/3/03), 848 So.2d 754, a seventh-grade student sustained a fractured jaw when he was punched by another student in the school gymnasium. Despite school procedures set up to prevent students being in the gym without supervision, during the period in question there were seven students unsupervised in the gym. Among them was the student who attacked the minor plaintiff. The attacker actually had forged a hall pass in order to get to the gym to hit the plaintiff and the plaintiff knew he was not supposed to go into the gym without a teacher. Thus, both students violated school policy when they chose to be in the gym at that time.
In Coutee, we found that the school and the school board did not provide reasonable supervision over the students, that there was a causal connection between the lack of supervision and the incident, and that the risk of this injury was foreseeable. We amended the judgment, however, to change the allocation of fault, reducing the fault of the school and the school board and assigning a greater percentage of fault to the attacker.
In Pierce v. Tangipahoa Parish Sch. Bd., 02-139 (La.App. 1 Cir.12/20/02), 836 So.2d 328, the first circuit upheld a summary judgment dismissing a school board and a school principal. In that case parents of injured students brought negligent *103 supervision claims regarding an incident in which students injured other students with blow darts made out of sewing needles blown through drinking straws. In support of a motion for summary judgment, the school board filed an affidavit by the school principal, which established that there were no previous reported incidents of this kind of behavior and, upon learning of the situation, the principal took appropriate steps immediately to address the problem. The court of appeal pointed out that the plaintiffs' failure to oppose the motion for summary judgment meant there was an absence of factual support for their claim of negligent supervision, which could not be inferred from the mere occurrence of the incidents, so that summary judgment was appropriate.
In this case, however, we find there are genuine issues of material fact regarding foreseeability of a possible attack on one student by other students. Teacher Smith stated in her deposition that she did not always follow the school procedure of giving children a hall pass to go to the restroom because "in kindergarten ... they have to go to the bathroom so often." If a child requests to go to the restroom during the school day, Smith said, she will give that child a pass to go to the restroom alone. Otherwise, however, Smith had times set aside during the day for all the children to go to the restroom, in which she would send the children in groups of four because of time constraints. "[If] I'm watching them, they don't require a pass. I'm either standing in the doorway or I'm in the hallway, we're in a line, and I'm right there in the line, sending four at a time to the bathroom." Smith said she would watch the children when they made group restroom visits "[b]ecause one child is not going to play and get in trouble as likely to play and get in trouble by himself as four students are. But you have to send four because of time restraints." However, Smith did not specifically state that she was either standing in the doorway or waiting in the hallway for the children on this occasion.
In addition, Smith testified that she once was assaulted by a fourth-grader who struck her as Smith was breaking up a fight between that student and another student. Smith also admitted she is aware of incidents of children at the school physically accosting other students, which she said happens at least once a month, and also of children assaulting teachers.
The plaintiff testified in her deposition that she had a meeting with Galloway (the school principal) and Smith, at which Smith stated that Noah was "just as guilty" as the other children "because he didn't pull his pants up and run out." In addition, Smith admitted to the plaintiff that she told the children that she was going to call the police, although Smith told the plaintiff she wasn't speaking to Noah, but rather she said it because the mother of one of the other children involved in the incident had told her to say that to that child if he did anything bad.
Brenda Grisham, Noah's grandmother, testified in her deposition that they did not learn of the incident in the school until the following Monday, when they were bringing Noah to school. As they pulled up in front of the school they saw police cruisers parked there and Noah became hysterical. Upon questioning him he told them his teacher had threatened to call the police and he thought the police were there to put him in jail.[1] Grisham and the plaintiff requested a meeting with the principal and insisted that the teacher also attend.
*104 At the meeting the principal told them there had been an incident in the bathroom. He told them "children are curious" and that "they did these things." Grisham said she was upset because the principal seemed to want to "sweep it under the rug." She also talked about the school's lack of cooperation in moving Noah to another kindergarten class so he could avoid being around the other boys.
Based on the evidence above, we find there are genuine issues of material fact regarding the foreseeability of an attack against one student by one or more other students, regardless whether the sexual nature of the attack was foreseeable. In addition, we find there are genuine issues of material fact regarding whether the school's handling of the matter contributed to Noah's subsequent psychological and medical problems. This case was not ripe for summary judgment.
For the foregoing reasons, the judgment is reversed and the case is remanded for further proceedings regarding the reinstated portion. Costs of this appeal are assessed against the defendant-appellee.
REVERSED AND REMANDED.
NOTES
[1] They learned subsequently that the police were at the school to read books to the children.