STEWART, J.
 

 | Rlaintifí/Appellant, Breanna Hood, is appealing a judgment rendered in favor of the Defendant/Appellee, Ouachita Parish School Board. For the reasons discussed below, we reverse the trial court’s judgment and remand the matter for further proceedings.
 

 FACTS
 

 On March 18, 2005, L.B. was sexually assaulted during Donna Patton’s Algebra I class at West Monroe High School (“West Monroe”), when D.B. exposed himself to her, and touched her with his hand. Patton did not notice the sexual assault, nor did L.B. report the assault to her. However, B.L., who is one of L.B.’s friends, reported the incident to Carolyn Berry, who is the Family and Consumer Sciences teacher at West Monroe. Berry then reported the incident to Assistant Principal Daniel Lane. In the presence of four assistant principals, D.B. subsequently admitted that he exposed himself to L.B. and touched her.
 

 Assistant Principal Lane, who is the assistant principal that D.B. is assigned to, collected the necessary paperwork regarding the incident. Lane recommended that D.B. be expelled and represented West Monroe at the expulsionary hearing. The expulsionary hearing was handled by Gary Armstrong, who is a Child Welfare and Attendance Officer for the Ouachita Parish School Board. After the expulsionary hearing was held, Armstrong recommended that D.B. attend an alternative school for the rest of the 2004-2005 school year, and the first semester of the 2005-2006 school year. Armstrong also set forth the following conditions or precautionary measures |2not mandated by the school board, that had to be met when D.B. returned to West Monroe:
 

 1. He will attend [West Monroe] on a “probationary” status, meaning that he may be dismissed from [West Monroe] for any major infraction.
 

 2. He agrees to attend counseling sessions at school with our school psychologist as scheduled by the school administration.
 

 3. He will have no classes scheduled with the other student involved in the incident that led to his expulsion, and
 

 4. If possible, the two of them will be scheduled on separate lunch shifts. In addition, [D.B.] will be expected to “stay away” from the other student as much as is reasonably possible at school.
 

 These conditions were contained in a letter addressed to Edna Brown, D.B.’s grandmother, dated June 21, 2005.
 

 On January 9, 2006, D.B. was permitted to return to West Monroe. D.B. was placed in Clara Hudson’s Biology class with L.B. When L.B. saw D.B. in the class, she immediately began to cry. She also noticed a fellow classmate, C.Y., grabbing his crotch and laughing as he mocked the August 18, 2005 incident. After this incident, L.B. withdrew from West Monroe.
 

 L.B. enrolled in Claiborne Christian School, which was a great financial hardship to her family. In order to alleviate tuition costs, L.B. got an after-school job. She has suffered from panic attacks and had to attend counseling.
 

 On July 21, 2006, Breanna Hood filed suit, individually and on behalf of her minor daughter, L.B., against Ouachita Parish School Board, on the grounds that it intentionally or negligently supervised her minor daughter |3and failed to provide ap
 
 *1256
 
 propriate safeguards. The trial took place on July 29, 2009.
 

 On July 30, 2009, the trial court rendered judgment in favor of Ouachita Parish School Board, finding that Hood failed to carry her burden of proof as to all necessary elements of her cause of action. Hood now appeals, asserting three assignments of error.
 

 LAW AND DISCUSSION
 

 March. 18, 2005 Incident
 

 In the first assignment, she asserts that the trial court erred in finding that the sexual assault that occurred on March 18, 2005, was spontaneous in nature and unforeseeable. Hood further argues that it is reasonable to expect that a teacher should and would have become aware of the assault and would have protected the victim.
 

 The duty of a school to protect its students is governed by the general liability provisions of La. C.C. art. 2815 and the more specific provisions of La. C.C. art. 2320. La. C.C. art. 2315(A) reads:
 

 A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2320 reads:
 

 Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
 

 Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
 

 In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have Uprevented the act which caused the damage, and have not done it.
 

 The master is answerable for the offenses and gwcm-offenses committed by his servants, according to the rules which are explained under the title:
 
 Of quasi-contracts, and of offenses and quasi-offenses.
 

 Essentially, the analysis of the School Board’s independent liability is the same under both La. C.C. art. 2315 and 2320, as liability under each statute requires that the School Board breach its duty of reasonable supervision over its students.
 
 Wallmuth v. Rapides Parish School Board, et. al.,
 
 2001-1779 (La.4/3/02), 813 So.2d 341. A school board, through its agents and teachers, owes a duty of reasonable supervision over students. La. C.C. art. 2320;
 
 Wallmuth, supra; Adams v. Caddo Parish School Bd.,
 
 25,370 (La.App. 2 Cir. 1/19/94), 637 So.2d 466. This duty does not make the school board the insurer of the safety of the children.
 
 Hunter v. Caddo Parish School Board,
 
 627 So.2d 772 (La.App. 2 Cir.1993). Constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision.
 
 Adams, supra.
 

 Before liability can be imposed upon a school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident.
 
 Adams, supra; Wallmuth, supra.
 
 Further, the risk of unreasonable injury must be foreseeable, constructively or actually known, and preventable if the requisite degree supervision had been exercised.
 
 Hunter, supra; Adams, supra.
 
 Said differently, educators are required to exercise only that supervision and | .-discipline expected of a reasonably prudent person under the circumstances at hand.
 
 Adams, supra.
 

 
 *1257
 
 In this case, Donna Patton used “pairing,” which is a method by which she paired a student who was stronger in the subject with a student who was not quite as strong for peer tutoring. She also walked around the classroom periodically to monitor the students’ progress.
 

 On March 16, 2005, D.B. was paired with L.B. in the very back of the classroom. Patton was in the front of the classroom writing the students’ assignments on the overhead projector. Patton testified that if a student’s chair is pushed under the table, it would conceal his lap. Patton also testified that although she had previously written up D.B. for talking and possibly cursing, he had never acted inappropriately in her class towards a fellow female student prior to this incident. Based on these facts, we can assume that Ms. Patton did exercise reasonable supervision over her high school class and that there was no possible way that she could have seen the inappropriate behavior occur.
 

 D.B.’s conduct was unforeseeable, not constructively or actually known, and not preventable. Therefore, we find that the lower court did not err in determining that Ouachita Parish School Board was not liable for the Plaintiffs injuries regarding the March 18, 2005 incident. This assignment of error bears no merit.
 

 January 9, 2006
 

 In the second assignment of error, Hood contends that the trial court erred in determining that West Monroe did not breach its duty to protect |fiL.B. when D.B. and L.B. were placed in the same class together on January 9, 2006, which was after D.B. returned to West Monroe from the alternative school. More specifically, Hood argues that a prior sexual assault creates a duty on the part of the school to take reasonable measures to protect the victim and other students.
 

 In
 
 Doe ex rel. Doe v. Desoto Parish School Board,
 
 39,779 (La.App. 2 Cir. 6/29/05), 907 So.2d 975, a 16-year-old female basketball player participated in sexual activities with five male basketball players on a school bus. Due to a history of prior acts of sexual misconduct during athletic bus trips, the school implemented a strict school policy requiring all of the male basketball players to be positioned separate and apart from the female basketball players, with the adult coaches sitting between the two sections while the bus was in transit. During the trip in question, the coach abandoned her position between the male and female section of the bus, switched seats with the victim, and went to sleep.
 

 The court in
 
 Doe
 
 stressed that when there was knowledge of prior sexual misconduct, the school had a duty to provide a heightened level of supervision:
 

 It is reasonable to assume that knowledge of these prior sexual incidents involving the high school would place the coaches on notice that a certain level of supervision would be required on this school-sponsored bus trip. Furthermore, this sexual incident was not a “spontaneous act” that could not have been prevented with adequate supervision on the part of the coaches. The record further established that, but for these two coaches’ failure to adhere to this school policy, this sexual incident could have been easily avoided.
 

 17Similarly, in this case, the knowledge of the March 9, 2005 incident placed the administration on notice that a heightened level of supervision was necessary. Several members of West Monroe’s administration testified at trial that L.B. and D.B. were supposed to be separated in all of their classes in order for D.B. to be permitted to return to school. Gary Armstrong, who is a Child Welfare and Attend-
 
 *1258
 
 anee Officer for the Ouachita Parish School Board, informed Principal Shere May that D.B. was not to have any classes with L.B. Assistant Principal Janis Brewster, who oversees the guidance counselors at West Monroe, testified that she was with May when May and Armstrong discussed and agreed that L.B. and D.B. were not to have any classes together. Brewster instructed Kathy Young, a guidance counselor at West Monroe who was responsible for L.B.’s and D.B.’s schedules, not to place them in any classes together.
 

 West Monroe’s knowledge of the March 18, 2005 incident placed West Monroe’s administration on notice that, at the very least, L.B. and D.B. should not be in any classes together. In fact, West Monroe, along with the Ouachita Parish School Board, opted to allow D.B. back in school, with the condition that he would never be allowed to take classes with L.B. D.B. even testified that he signed an agreement stating that he wouldn’t be in any classes with D.B.
 

 When L.B.’s mom, Breanna Hood, was informed by Armstrong that D.B. would be returning to West Monroe, he assured her that D.B. would not have any classes with her daughter. Vice Principal Shelby Ainsworth testified that it is a normal practice for West Monroe to separate students |swho had a conflict when they return to the school. He also agreed that West Monroe assumed this obligation with L.B. and D.B. and that the obligation was not fulfilled. When the administration at West Monroe High School permitted D.B. to return to school, West Monroe placed a heightened duty upon itself to keep D.B. out of that classroom and to try to prevent the type of incident that occurred.
 

 L.B. relied on West Monroe’s duty of reasonable supervision to protect her, since it was the only assurance that she had for her safety when D.B. returned. Unfortunately, West Monroe breached its duty on January 9, 2006, which was the very first day that D.B. returned to school and the day that he was placed in a class with L.B. Upon seeing D.B., L.B. immediately became upset. She was also subjected to laughter and mockery from C.Y., who mocked the March 18, 2005 incident by laughing at L.B. and grabbing his crotch in her direction. This incident caused her to withdraw from West Monroe High School that very same day.
 

 In the notice of judgment, the trial court noted that “the incident of exposure by [D.B.] and the indecent behavior by grabbing the crotch by [C.Y.] were spontaneous in nature and unforeseeable.” While we agree with the trial court’s reasoning in determining the incident that occurred on March 18, 2005, which was when D.B. exposed himself to L.B., was spontaneous in nature and unforeseeable, we disagree with the trial court about the January 9, 2006 incident. When C.Y. grabbed his crotch, it was clear that he was mocking the March 18, 2005 incident. It is not a coincidence that C.Y. committed this act on this particular day. He |9observed that D.B. and L.B. were in this class together, saw that D.B.’s presence was upsetting L.B., and decided to tease her about it. C.Y. had never teased L.B. in the past about the March 18, 2005, incident, which is a clear indication that, but for D.B.’s presence in the classroom, C.Y. would likely not have grabbed his crotch in a mocking manner and laughed at L.B.’s discomfort. Since West Monroe made some attempt, although unsuccessful, to schedule D.B. and L.B. in separate classes, we can assume West Monroe was aware that an incident like this could occur. The January 9, 2006 incident was not spontaneous in nature and was clearly foreseeable by West Monroe, which failed
 
 *1259
 
 in its duty to protect L.B. by ensuring that her class would not include D.B.
 

 The trial court erred in overlooking the fact that D.B. was not supposed to be in that classroom with L.B. West Monroe’s knowledge of the March 9, 2005 incident placed it on notice that a certain level of supervision would have to be exercised when D.B. returned on January 9, 2006. West Monroe should have made sure that D.B. and L.B. did not have any classes together. The record clearly establishes that but for West Monroe’s act of scheduling D.B. and L.B. together, the January 9, 2006 incident would have been avoided. On January 9, 2006, West Monroe did breach its duty of reasonable supervision. Therefore, we find that this assignment of error has merit.
 

 Damages
 

 In the third and final assignment of error, Hood contends that trial court erred in failing to award damages to the victim, who had to leave her high school and attend a small private school following the sexual assault.
 

 |1(1As discussed in the second assignment of error, we have found that West Monroe breached its duty of reasonable supervision regarding the January 9, 2006 incident. The January 9, 2006 incident caused L.B. to withdraw from West Monroe High School. L.B. subsequently enrolled in Claiborne Christian School, which was a great financial hardship to her family. Additionally, she has suffered from panic attacks and had to attend counseling. The counseling sessions created medical expenses for her family. However, the record does not contain adequate information to determine the amount of damages owed to the plaintiff. We find that is necessary for this court to remand this matter for a determination of damages to be awarded to the plaintiff for West Monroe’s breach of its duty of reasonable supervision.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed against the defendant, Ouachita Parish School Board.
 

 REVERSED AND REMANDED.