JOHNSON, J.,
dissents and assigns reasons.
hi disagree with the majority that concludes LSA-R.S.17:158(A)(1) is an accommodation statute, not a safety statute, and that “C.C.’s true intent was to walk home rather than seek out alternatives” to a bus ride home. LSA-R.S. 17:158(A)(1) provides, in pertinent part, that:
city school board shall provide free transportation for any student attending a school of suitable grade approved by the State Board of Elementary and Secondary Education within the jurisdictional boundaries of the parish or school board if the student resides more than one mile from such school.
The evidence is clear that C.C. was entitled to free transportation by reason of her grade level, and the fact that she lived more than one mile from the school.
The record shows that the school enacted a bus use policy which provided a late bus for the “tutoring students” and students engaged in approved after school activities, but, as part of their punishment, denied the disciplinary students the “luxury” of a ride home. The record demonstrates that this policy was clearly articulated to the students informing them the behavior clinic students were not allowed to ride the late bus.
12Any policy contrary to the statutory requirement of free transportation for students residing more than one mile from school heightens the school’s burden of responsibility to ensure that any child denied such transportation has an alternative, safe means of getting home.
*1134 Despite the self-serving testimony by teachers and staff that the policy allowed behavior clinic students a right to ride the “tutoring bus” when space was available, C.C. testified that she knew that she could not ride the late bus because she was told by the principal and the behavior clinic teacher that this was not an option. She testified that she was afraid to even inquire about riding the late bus, for fear of getting suspended.
Additionally, C.C. testified that she was denied access to a telephone call for a ride. She testified that the principal’s office, where the telephone is located, was locked, and a teacher, Ms. Reed, refused her use of a cell phone. Despite the testimony by school officials that “no child is left behind,” and that the staff had personally transported children or enlisted assistance from law enforcement officials to provide transportation, the record is devoid of any evidence that C.C. knew these resources were available.
C.C. testified that she had never walked home from school prior to the date of this incident, and she had never taken the city bus, only the school bus. The deposition testimony of S.R.C., the child who walked to Popeyes with C.C., was to the effect that C.C. never purchased any food at Popeyes, only a cup of ice, and she did not appear to have any money to ride the city bus. S.R.C. also testified that after eating, she took the city bus that stopped in front of Popeyes, while C.C. walked home.
The duty is imposed upon the School Board by LSA-R.S. 17:158(A)(1) to provide free transportation to C.C. because she lived more than one mile away from laschool. C.C. was statutorily entitled to a free ride home, regardless of whether she was in a behavior clinic or a tutoring clinic. In my view, the School Board breached its duty to adequately supervise this student’s safety when the risk of injury was foreseeable. It was the consensus of the testimony of all witnesses, that the area which C.C. was forced to walk through, was not a safe environment for a twelve year old. See, Wallmuth v. Rapides Parish School Board, 01-1779, 01-1780 (La.4/3/02), 813 So.2d 341. It is not reasonable to conclude that LSA-R.S. 17:158(A)(1) allows school employees to refuse transportation to students with discipline issues. Under the statute, the School Board has a duty to provide transportation to students in a non-diseriminatory fashion, and failure to perform that duty encompassed the risk of C.C. being injured while walking home.
I would affirm the decision of the court of appeal which found liability and award damages.