936 So.2d 865 (2006)
Daphne M. AGNOR (a/k/a Angor), Individually and as Tutrix of the Minor, Delana Marie Spinks Plaintiff-Appellee
v.
CADDO PARISH SCHOOL BOARD Defendant-Appellant.
No. 41,224-CA.
Court of Appeal of Louisiana, Second Circuit.
August 1, 2006.
Rehearing Denied August 17, 2006.
*866 Gordon E. Rountree, A.P.L.C., Shreveport, Counsel for Appellant.
Tyler & Johnson, LLC, By Tommy Jan Johnson, Shreveport, Counsel for Appellee.
Before WILLIAMS, DREW and MOORE, JJ.
DREW, J.
The Caddo Parish School Board appealed the judgment awarding damages to Daphne M. Agnor,[1] individually and as tutrix of her child, Delana Marie Spinks, for the child's injuries sustained in a fall at school. Following a bench trial, the trial court apportioned fault 75% to the Caddo Parish School Board and 25% to the child. The parties stipulated that medical expenses were $6,647.93. Additionally, the trial court awarded plaintiffs $25,000 for general damages subject to a 25% reduction due to the fault apportioned to the child, and the defendant now appeals. We affirm, adopting and reproducing the trial court's thoughtful, scholarly, and thorough reasons for judgment, which are attached as an appendix.

DISCUSSION
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Cole v. Department of Public Safety & Corrections, 01-2123 (La.9/4/02), 825 So.2d 1134; Stobart v. State, Dept. of Transp. and Dev., 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Cole, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989). To reverse a fact *867 finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart, supra.
On appeal, the school board complained that the trial court erred in deciding:
 the teacher gave inadequate supervision,
 the floor was unreasonably dangerous,
 the floor was a cause-in-fact of the fall,
 discretionary immunity under La. R.S. 9:2798.1 did not protect the school board from liability;
 the school board was 75% liable and the child was 25% liable, and
 $25,000 was the appropriate general damage award.
The supreme court in Wallmuth v. Rapides Parish School Board, XXXX-XXXX (La.4/3/02), 813 So.2d 341, 346, stated:
A school board, through its agents and teachers, owes a duty of reasonable supervision over students. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. This duty does not make the school board the insurer of the safety of the children. Constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision.
Citations omitted.
While the foregoing is a succinct statement of the law, the Wallmuth case is factually inapplicable to this matter, since Wallmuth dealt with an intentional tort involving older children (i.e., fighting).
Here, the school board argued that there was adequate supervision for what was a instantaneous, unforeseeable event for which the school was not responsible. The trial court was not clearly wrong in holding that there was inadequate supervision (a violation of the duty to protect the young child) and an unreasonably dangerous condition which was a cause-in-fact of the foreseeable harm.
La. R.S. 9:2798.1(B) states:
Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
The school board argued that the teacher's discretionary acts in supervising the children's use of the restrooms make this immunity applicable here. The trial court cited Gary on Behalf of Gary v. Meche, 93-271 (La.App. 3d Cir.11/3/93), 626 So.2d 901, which stated that 9:2798.1 did not immunize the school board from tort suits related to its responsibility for the supervision of children.[2] After being dismissed from school, a six-year-old ran into the street and was struck by a truck. The court found the school had abdicated its responsibility to supervise its youngest students. Gary, supra. Likewise, in this case, neither the school nor the school board had a policy about young playful children carrying pencils into bathrooms which the school personnel knew had damp, slippery floors.
The school board also argued that the trial court erred in apportioning only *868 25% of the fault to Delana Spinks, because Delana admittedly broke three rules that contributed to the accident. While the trial court found that Delana did share negligence because she knew the rules and chose to break them, the court also found that, due to Delana's young age and the number of her infractions, 25% was a proper allocation of fault. Not only was the school board aware of the dangerous, wet condition of the floor and the propensity of pencils to cause injury, but the bathroom monitor designated by the teacher was a third-grader who was unlikely to tattle on her classmates for breaking the rules.
The school board contends that the trial court's award of $25,000 in general damages was excessive due to the fact that Delana returned to school within one week, and has experienced no residual sinus or visual problems since the accident. It is the school board's position that the upper limit of general damages should be only $10,000 to $12,000. The trial court found that, due to the unusual circumstances surrounding this accident, the award of $25,000 in general damages to Delana was appropriate. This was a traumatic and shocking injury, so much so that medical personnel came in and out of the room simply to view it, causing Delana to believe she was dying. She underwent anesthesia and surgery, and when she returned to school she was teased by other children. She suffered nightmares and teasing after the accident. The damage award was within the trial court's discretion and reasonable under the facts of this case.

CONCLUSION
In every regard, the trial court was wise in its rulings. We agree and adopt its reasons in toto. Neither party is clearly 100% at fault for the unfortunate incident of February 14, 2001. While the school board was negligent in its failure to address unreasonably dangerous conditions, Delana Spinks was also negligent in her failure to acknowledge long-implemented school rules. However, as mentioned above, due to Delana's young age and the number of her infractions, as compared to the defendant's choice to ignore the obvious risks associated with this accident, the fault apportionment was appropriate. The trial court's conclusions of fact were justified by the record, and there was no abuse of discretion on the part of the trial court.

DECREE
The judgment of the trial court is AFFIRMED.

APPENDIX
DAPHNE M. AGNOR, INDIVIDUALLY
AND AS TUTRIX OF THE MINOR,
DELANA MARIE SPINKS
 VERSUS
CADDO PARISH SCHOOL BOARD
NUMBER: 464,417-B
FIRST JUDICIAL DISTRICT COURT
CADDO PARISH, LOUISIANA
FILED SEP 28 2005

FINDINGS OF FACT AND REASONS FOR JUDGMENT
This suit arises out of an incident that occurred on February 14, 2001, when Delana Spinks, a third grade student at Forest Hills Elementary School, fell in the girls' restroom. The pencil she was holding in her hand lodged into the area immediately beneath her right eye when she tried to break her fall. The pencil was later removed during surgery. Although the Incident was quite traumatic at the time, as shown by the pictures introduced at trial, Delana did not suffer any vision loss or permanent damage. Delana's mother, *869 Daphne Agnor, as Tutrix, filed suit against the Caddo Parish School Board seeking damages for her daughter's injuries. This matter was tried as a bench trial on September 8, 2005. The Court heard testimony from (1) Michael Puyear (Delana's third grade teacher); (2) Sara Ebarb (the school principal); (3) Brooke Levendikis (Delana's friend and classmale); (4) Daphne Agnor (Delana's mother and tutrix); (5) Delana and (6) Oscar Killian (the assistant principal). Numerous exhibits were introduced into evidence. The parties filed comprehensive pre-trial briefs and post-trial memoranda. The Court has thoroughly considered all of the evidence, the parties' briefs and memoranda, and the applicable law. For the reasons assigned below, the Court finds that under all the unique circumstances presented by this case, the accident was caused by the fault and negligence of both the Caddo Parish School Board and Delana Spinks. The Court allocates 75% of the fault to the Caddo Parish School Board and 25% of the fault to Delana. The Court finds that the appropriate award for damages (prior to reduction for Delana's fault) is $6,647.93 for the stipulated amount of the medical expenses and $25,000.00 for the general damages. Thus, the plaintiff is entitled to an award in the amount of $23,735.95 (75% of $31,647.73), together with legal interest. Costs are assessed 25% to plaintiff and 75% to defendant.

FACTUAL BACKGROUND
Delana was 8 years and 10 months old and in the third grade at the time of the accident. She and twenty (20) other students were in Mr. Michael Puyear's class for most of each school day. The class was located in a "temporary classroom building," away from the main school buildings. Twice a week the students attended a science enrichment lab in the main building at either 1:00 p.m. or 12:15 p.m., depending on the day. The students walked along a sidewalk towards the "inside" school building. The students would have a restroom stop on the way to the lab. The bathrooms usually used by Mr. Puyear's students were referred to as "the outside bathrooms," as the doors were located on the outside of the main school buildings. There was another set of bathrooms inside the main building with inside doors, and these were referred to as the "inside bathrooms." Mr. Puyear testified the inside bathrooms were usually being used by a fourth grade class and so his class primarily used the outside bathrooms. Mr. Puyear testified he routinely warned the children that the outside bathroom floors were slippery and slick and to use caution.
On the date of the accident, the weather was described by all as misting rain. The title floor of the outside girls' bathroom was damp and wet in some places. Delana and her friend Brooke both testified that the floor was always wet near the sink area due to students splashing water from the sinks. The evidence is undisputed that at the time of the incident the school required the students to carry their own pencils to the science enrichment lab. However, it developed at trial that the procedure pertaining to what was to be done with the pencils en route while the children were in the restrooms was less than clear. Prior to trial and in response to discovery propounded by the plaintiff, the school board responded as follows:

INTERROGATORY NUMBER 9:
Were the students in the class of Delana Marie Spinks instructed/ordered to carry pencils in their hands from outside detached buildings to the main building of the school to amend another class?

*870 ANSWER TO INTERROGATORY NUMBER 9:

Yes, with exception of when they went to the bathroom. Then, they were to give their pencils to the monitor while in the bathroom.

INTERROGATORY NUMBER 10:
If the answer to interrogatory number 9 is in the affirmative, what are the names, addresses, and telephone numbers of the person/persons that created the policy/custom and the names, addresses and telephone numbers of the persons that authorized the policy/custom?

ANSWER TO INTERROGATORY NUMBER 10:
Sara Ebarb, principal.

REQUEST FOR PRODUCTION OF DOCUMENTS NUMBER 1:
Please produce all written policies, procedures, and/or protocol pertaining to students handling, carrying, and/or possessing sharp instruments while on school property in existence at the time of the accident the subject of this lawsuit.

RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS NUMBER 1:
No written policy on pencils, only verbal.
At the trial the principal did not recall that she or the school had a set policy as to what was to be done with the pencils when the children went into the restroom en route to the science lab. She testified she was unaware that the children were taking the pencils into the restroom. She indicated the rule in the discovery response that the children were to give the pencils to the monitor would have been an individual teacher's rule. Mr. Puyear testified that his procedure was to have a monitor in both the girls' and boys' bathrooms. The two monitors would come from his third grade class, and the monitors changed on a daily basis. The children were instructed to (1) either hand the pencil to the monitor in the bathroom, or (2) put the pencil on the sink while using the restroom. Delana and her classmate Brooke both testified that they understood from Mr. Puyear's rules they were supposed to give the pencil to the monitor or put it on the sink. They testified that all the girls routinely ignored these rules and kept their pencils with them while in the bathroom. The monitors apparently did not "tattle," and Mr. Puyear was unaware that the students were violating the rules.
The school also had verbal rules which were given to the students which prohibited playing in the bathrooms and prohibiting the students from lingering in the bathroom after washing their hands. Delana acknowledged that she was aware of these school rules in addition to Mr. Puyear's rules concerning the pencils in the bathroom.
On the date of the incident, Delana testified she took her pencil into the stall with her. After exiting the stall she put her pencil on the sink while washing her hands. Instead of promptly leaving the bathroom at that point, she picked up her pencil and engaged in a "sliding game" with several other girls. The girls would run across the damp and wet tile floor and slide and see who could slide the furthest. This is when the unfortunate incident occurred. Delana testified that she lost her balance after she had completed her slide. She fell on the pencil in her hand when she tried to break her fall. It penetrated her face right below her right eye and near her nose. Delana acknowledged at trial that she broke three rules  (1) playing in *871 the bathroom, (2) failing to give the pencil to the monitor and/or keeping it on the sink, and (3) failing to promptly leave the restroom after washing her hands.
Mr. Puyear heard her screams and immediately ran in the bathroom. He carried her to the office and kept her from pulling the pencil out. The principal calmed Delana down and 911 was called. Delana was taken to LSU Medical Center. After a CT scan, surgery was performed to remove the pencil. The pictures show two or three small stitches beneath her eye. Delana spent one night in the hospital and returned to school about a week later. This event traumatized not only Delana, but also her family, Mr. Puyear and Mrs. Ebarb.

CLAIMS OF PLAINTIFF
The plaintiff contends the School Board was negligent in having the procedure of requiring the students to carry their pencils from the temporary building to the main building for the science lab; in failing to close the outside bathrooms during rainy days; in failing to warn the students that the floor of the bathroom was slippery, and/or in failing to clean and dry the floor; and in having a third grade student monitor and be in charge of supervising the girls in the bathroom.

POSITION OF DEFENDANT
In the pre-trial order the position of the defendant was as follows:
". . . that the procedure of requiring the students to take their pencils with them from the T-building to the main building was reasonable, especially considering the alternative, which would have been to allow the students to use community pencils in the science lab, which facilitates the spread of germs. There had been no prior accidents resulting from the students taking their pencils with them from the T-building to the main building.
Further, the protocol was for the pencils to be collected by a monitor designated by the teacher, Mr. Puyear, while the students were using the bathroom. The day in question, 2/14/01, Mr. Puyear warned the students that the floor in the bathroom would be slippery and sweaty because of the misting rain and cautioned the students not to play, run or slide in the bathroom. There was a school rule against playing in the bathroom.
Delana Spinks violated the school rule against playing in the bathroom and admittedly was sliding in the girls's bathroom while still having her pencil in her hand. She lost her balance, fell, while playing, and the pencil jammed into her face just below her right eye. Defendant contends the sole cause of the accident was the negligence of Delana Spinks in violating the school rule. Defendant contends that had Delana Spinks not been sliding and playing, even with the pencil in her hand, an accident would not have occurred. Reasonable supervision existed at all times. Alternatively, defendant contends R.S. 9:2798.1, discretionary immunity applies.
The defendant also pled the negligence of Delana in its answer to the suit.

APPLICABLE LAW
The duty-risk analysis under La. C.C. art. 2315 is as follows:
(1) Was the conduct of which the petitioner complains a cause in fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Whether the requisite duties were breached?

*872 (4) Was the risk, end harm caused, within the scope of protection afforded by the duty breached?
(5) Were actual damages sustained?
This case presents legal issues pertaining to both "supervision" and "slip and fall" cases.
In Wallmuth v. Rapides Parish School Board, XXXX-XXXX (La.4/3/02), 813 So.2d 341, the Louisiana Supreme Court set forth the standard of care applicable to a school board in supervision cases:
A school board, through its agents and teachers, owes a duty of reasonable supervision over students. La. Civ.Code art. 2320; Adams v. Caddo Parish School Bd., 25,370 (La.App. 2 Cir. 1/19/94), 631 So.2d 70, writ denied, 94,684 (La.4/29/94), 637 So.2d 466. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. Jackson v. Colvin, 98-182 (La.App. 3 Cir. 12/23/98), 732 So.2d 530, writ denied, 99-228 (La.3/19/99), 740 So.2d 117. This duty does not make the school board the insurer of the safety of the children. Id. Constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision. Adams, 631 So.2d 70.
Before liability can be imposed upon a school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident. Id. "Injury from horseplay between discerning students which, at some stage may pose an unreasonable risk of harm to the participants, does not automatically and of itself render the supervising authority liable." Henix v. George, 465 So.2d 906, 910 (La.App. 2 Cir.1985). Furthermore, before a school board can be found to have breached the duty to adequately supervise the safety of students, the risk of unreasonable injury must be foreseeable, constructively at actually known, and preventable if a requisite degree of supervision had been exercised.
In Green v. Orleons Parish School Board, XXXX-XXXX (La.App. 4th Cir.2/7/01), 780 So.2d 1082, the Court summarized the elements that must be proven in a slip and fall case against a school board:
. . . the following elements . . . must be proven by a plaintiff in a slip and fall case against a school board . . .:
1. Cause-in-fact;
2. Breach of the duty to protect against unreasonable risk of injury from dangerous or hazardous objects in the school building and on the grounds;
3. Ease of association between the duty and the injury suffered by the plaintiff;
4. Relationship between risk of fall and reasonableness of the measures the school board took to eliminate the risk; and,
5. Actual or constructive notice.

RULING ON LIABILITY
The Court had the opportunity to watch Mr. Puyear, the teacher, while he testified. The Caddo Parish School Board is fortunate to have someone of his caliber teaching in our schools. He served in the United States Air Force from 1991-1995 and received his degree in Elementary Education in 1999. He began teaching at Forest Hills in September 1999. He obviously is a good teacher and a kind and caring person. Through circumstances beyond his control, he was put in a very difficult *873 position here. Due to overcrowding in our schools, his classroom is a "t-building" far removed from the "inside buildings." He was required to escort 21 children from this building to the main building in all types of weather. The school had the long-standing policy of requiring the third, fourth and fifth graders to take their own pencils with them to the science lab. The younger children at the school apparently do not go to this lab, as this procedure of "changing classes" begins in the third grade. The third graders are on the lower end of the maturity scale for the students who are allowed to "change classes."
The children, of course, need a bathroom break. Mr. Puyear, being a male, cannot go into the girls' bathroom. Mr. Puyear had to utilize the outside bathrooms because the fourth graders were using the inside bathroom. Because state law mandates the number of required instructional minutes per day. Mr. Puyear cannot go in search of another inside bathroom. Unfortunately for Mr. Puyear, the school did not have a procedure in place addressing what was to be done with the pencils while the third graders were in the bathroom. The principal testified that she was unaware the pencils were being carried into the bathroom during the trip to the science lab. Although Mr. Puyear developed a plan, the plan was flawed because the monitor, who changed daily, was only a third grader. The children, under the supervision of a classmate, were given an option of what to do with their pencil. The rule was never enforced and was completely ignored. Mr. Puyear acknowledged at trial that he surrendered control over the children in trusting the monitor and students to follow the rules.
The Court fully understands that pencils are necessary tools of learning, and children routinely carry around school supplies. This is an unusual case because of the presence of so many different factors that contributed to this accident. The combination of the following factors results in the finding by the Court that the Caddo Parish School Board was negligent in this case:
1. The damp and wet condition of the title bathroom floor was caused by both the misting rain condition outside and the water from the sinks. These conditions were known to the teacher and the administration, according to the testimony of the teacher and the school administrators.
2. This was a third grade class. This was the first year these elementary school students "changed classes." They were on the lower end of the maturity level of children being given more responsibility and freedom in elementary school. Mr. Puyear, Mrs. Ebarb and Mr. Killian all acknowledged third graders are playful, have to be constantly reminded of rules, and they ignore the rules.
3. The bathroom monitor was a third grader and a classmate who would not be likely to tattle on her classmates or enforce a rule. The monitor changed on a daily basis.
4. There was no set rule as the children were given the option of either handing the pencil to the monitor or putting it on the sink.
5. The school personnel were aware that pencils can cause injuries. The principal testified she warned children not to run with pencils in their hands because they could fall and injure themselves. The assistant principal testified when he was a fifth grade teacher at an elementary school he instructed his students to *874 put their pencils in their pockets to avoid injuries.
6. The pencils could have easily been collected by the teacher or a monitor outside of the bathroom. The teacher testified that not all the students would need to use the restroom and these students would remain outside the restroom. The teacher also remained outside both the boys' and girls' bathrooms.
The Court finds that under all of the circumstances that presented themselves on February 14, 2001, as outlined above, the School Board failed to provide adequate supervision and failed to protect against injuries from the unreasonably dangerous condition of the wet and slippery floor. The defendant breached its duties of care to Delana under both the supervision cases and the slip and fall cases. Had Delana not had the pencil in her hand in this slippery and wet bathroom under the supervision of one of her classmates, this particular accident would not have occurred. This accident was easily preventable, as explained above.
The Court also finds that the School Board is not exempt from liability under La. R.S. 9:2798.1. This statute does not immunize schools from tort suits pertaining to the responsibility to supervise children. See, e.g., Gary on Behalf of Gary v. Meche, 626 So.2d 901 (La.App. 3d Cir. 1993).
Although Delana was only a third grader and children are not held to the same degree of care as adults, the Court finds that Delana was also negligent. She was described as a good student and she knew the school rules (1) prohibiting play in the bathroom, and (2) requiring students to exit after washing their hands. She also knew that Mr. Puyear expected them to hand the pencil to the monitor or put it on the sink. Had she followed all these rules, this accident would not have happened. The issue is what percentage of fault should be allocated to Delana.
The Court has read and considered all the comparative fault cases cited by the parties. The plaintiff, of course, argues Delana should not be assessed with any fault, or, at most, only 10%. The defense, of course, argues Delana is totally at fault for breaking all the school rules, or, at least, should be assessed with not less than 50% of the fault. Each case is unique and must be decided on its own facts. In this case, Delana was actively involved in conduct that she knew was against the rules. She broke three different rules. Considering her age and the number of infractions she committed, the Court believes that she should be allocated with 25% of the fault under all the circumstances of this case.

QUANTUM
The pictures of Delana with the pencil sticking in her face immediately below her eye are shocking, to say the least. Mr. Puyear, Mrs. Ebarb and Delana's mother all testified how upset Delana was and that Delana kept asking if she was going to die. Delana and the principal rode in the ambulance to LSU, where Delana's mother and other family members saw her and became most upset, which further upset Delana. Mrs. Ebarb kept complete control of the situation and calmed both Delana and her family down. Delana had to undergo a CT scan "in a tube" which further upset and frightened her. She underwent anesthesia and a surgical procedure to remove the pencil. The "after pictures" showed only two or three small stitches.
This was an unusual medical situation. Many interns, doctors, medical students and other medical personnel came to look at Delana, and this upset her and her family. Delana testified that all the commotion *875 made her feel like she was from "outer space." According to Delana's mother, the pictures taken at LSU have been published in medical journals. After she went home, Delana had nightmares and worried about freak accidents for months. Other students referred to her as "the girl with the pencil in her eye," which embarrassed her and caused her to re-live the accident. Since the accident occurred on Valentine's Day, Delana could not participate in Valentine's Day activities for two years. She did speak with the school counselor several times, which helped her. Although the incident and the immediate aftermath were no doubt very traumatic, the Court notes that Delana returned to school after one week. At trial (41/5 years post accident), she appeared to the Court to be a normal and happy teenager, and no scars are visible on her face. Under all these circumstances, the Court believes that an award of $25,000.00 for general damages is appropriate.
The Court awards the plaintiff the sum of $6,647.93 for the stipulated medical expenses and $25,000.00 for the general damages. These amounts are to be reduced by 25%, and thus the plaintiff is entitled to $23,735.95, together with legal interest. Costs are assessed 25% to plaintiff and 75% to defendant.
Counsel are requested to prepare and submit a Judgment within fifteen (15) days.
THUS DONE AND SIGNED in Chambers in Shreveport, Caddo Parish, Louisiana, on this 28th day of September, 2005.
/s/ Jeanette G. Garrett
JEANETTE G. GARRETT
DISTRICT JUDGE
Distribution:
Gordon E. Rountree
Rountree, Cox, Guin & Achee
Shreveport, Louisiana
ATTORNEY FOR PLAINTIFFS
Mr. Tommy J. Johnson
Tyler & Johnson, LLC
Shreveport, Louisiana
ATTORNEY FOR DEFENDANTS
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, DREW, MOORE, and LOLLEY, JJ.
Rehearing denied.
BROWN, J., would grant rehearing.
NOTES
[1] "Agnor" is sometimes spelled "Angor" in the record.
[2] The school board's reliance on Hardy v. Bowie, 1998-2821 (La.9/8/99), 744 So.2d 606, is misplaced. The Hardy court declined to apply statutory immunity statute to the city in a suit arising out of the alleged negligence of the police in preventing a death. See discussion of statutory immunity in Hardy, supra.