# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-1377

**J.M., individually and on behalf of her minor daughter, A.C.**

**VERSUS**

**ACADIA PARISH SCHOOL BOARD, JANE DOE, STEVE DUPLECHIN, AND ABC INSURANCE COMPANY**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH DISTRICT COURT
PARISH OF ACADIA, NO. 85749
HONORABLE HERMAN CLAUSE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## J. DAVID PAINTER
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Thibodeaux, C.J., dissents and assigns written reasons.**

Lauren K. Ledet
L. Clayton Burgess
P.O. Drawer 5250
Lafayette, LA 70502
Counsel for Plaintiff-Appellant:
    J.M., individually and on behalf of her minor daughter, A.C.

Ronald J. Fiorenza
Andrew E. Shaffer
P.O. Drawer 1791
Alexandria, LA 71309
Counsel for Defendant-Appellee:
    Acadia Parish School Board, Sophia Joseph, and Steve Duplechin

**PAINTER, Judge.**

Plaintiff, J.M., appeals the judgment of the trial court dismissing her action based on a finding that, although there was a breach of duty, that breach was not a cause-in-fact of any injury to Plaintiff. For the following reasons, we affirm.

## FACTS

The underlying facts of this case are not in dispute. On Friday, March 31, 2006, J.M. watched her fifteen-year-old daughter, A.C., get onto the school bus. After traveling about two blocks on the bus, A.C. asked the driver to let her off saying that she had a ride to school. The driver, Sophia Joseph, allowed A.C. to exit the bus without asking for or receiving the written permission slip required by school board policy. Instead of going to school, A.C. was picked up by a friend and driven to the home of her eighteen-year-old boyfriend, N.W.. While there, she engaged in sexual relations with him.

Around noon that day, J.M. received a phone call from Crowley High School Principal Steve Duplechin telling her that A.C. had not arrived at school that day. Duplechin told her he believed that A.C. was with N.W.. However, he refused to give her N.W.'s address. J.M. went to the Acadia Parish Sheriff's office for help locating her daughter. At the end of the school day, the Sheriff's office obtained N.W.'s address from the school. However, by the time the information was received, A.C. had left that location and was hiding from her mother because of her fear of the consequences of skipping school. She was located by the police on Sunday, April 2, 2006.

J.M. filed this suit on behalf of herself and her daughter seeking damages arising out of the incident. The trial court, after hearing evidence in the case, found

that while the School Board, through its employee, breached a duty owed to Plaintiff, it was not a cause-in-fact of any harm incurred as a result of the incident. As a result, he dismissed the action. J.M. appeals.

## DISCUSSION

J.M. asserts that the trial court erred manifestly in failing to find that the School Board's breach of duty was a cause-in-fact of the damages arising out of the incident.

"Breach of duty and cause in fact are factual questions to be determined by the factfinder." *Linnear v. CenterPoint Energy Entex/Reliant Energy*, 06-3030, p. 11 (La. 9/5/07), 966 So.2d 36, 44.

The testimony established the following: On approximately March 24, 2006, A.C. and N.W. were caught at school in what was referred to as a public display of affection. The principal testified that he warned N.W. of the possible legal consequences of a relationship between an eighteen year old and a fifteen year old. J.M. testified that after her daughter went missing she found a form in the girl's backpack indicating that her daughter had been given a three day in-school suspension for the incident, but the principal testified that a search of the school records did not show any suspension of either N.W. or A.C. during that time. A.C. testified that she was given an in-school suspension as well.

About two weeks before the incident made the basis of this suit, J.M. discovered a cell phone in her daughter's room that she knew did not belong to a family member. At first her daughter claimed that the phone belonged to her friend C.R. However, a call to the girl's house established that the phone did not belong to her. A.C. finally confessed that the phone belonged to N.W. When she discovered the boy's age, she called him and told him that he should come get his phone and that

2

she needed to talk to him. N.W.'s mother accompanied him to Plaintiff's house. J.M. told N.W. that he could not continue to have a relationship with her daughter. At this time, she apparently learned that on at least one on two prior occasions when A.C. had climbed out an open window late at night, she had been at N.W.'s house and his mother had sent her away.

On approximately March 30, 2006, A.C. and her friend C.R. planned to skip school to spend the day with their boyfriends. A.C. 's sister, E.C., was aware of the plan but did not participate. On Friday, March 31, 2008, A.C. asked to be let off the bus and told the driver that she had her mother's permission to do so. The bus driver testified that she believed the girl because she was well behaved and never a trouble maker on the bus. A.C. was picked up by C.R. and C.R.'s boyfriend who took her to N.W.'s house. Sometime during the morning, E.C. used another student's cell phone to call A.C. and tell her she needed to go home or get to school, because she was in trouble. Around noon, Duplechin called J.M. and N.W.'s mother. However, Mrs. N.W., a school teacher, was on a field trip and could not return home to find out what was going on. Instead she sent N.W.'s grandmother to check on him. When she arrived at the house, the girls hid until she left then got a ride to an abandoned house where they stayed until Sheriff's deputies found them on Sunday.

J.M. went to the school at approximately 3:00 p.m. where she spoke to E.C. and found out about the plan to skip school and that A.C. planned to get back on the bus at the end of the day. J.M. called her husband and found out that A.C. had not gotten off the bus, and that C.R.'s mother wanted to talk to her. C.R.'s mother informed J.M. that she had spoken to C.R. and tried to get her to come home but that the girls were scared, and she could not convince them to come home. J.M. searched A.C. 's

3

room to try to find some clue as to her possible whereabouts and found letters to A.C. from N.W. which indicated that the two had an ongoing sexual relationship. A.C. alleges that sometime Saturday or Sunday, a man who was visiting the abandoned house tried unsuccessfully to force her to have sex with him. Because of this, she called N.W. on C.R.'s cell phone, and he came to the house. She may have also spoken to her sister during the weekend. Finally, a neighbor reported activity at the abandoned house, and the Crowley Police or Sheriff's Deputies found the girls.

A.C. was received psychological treatment at Stuller Place in Lafayette, Louisiana for the problems allegedly resulting from this incident and an incident of sexual abuse which happened earlier in her childhood.

J.M. argues that but for the driver allowing A.C. to get off the bus, A.C. would have gotten to school and J.M., would not have been charged with truancy. However, no evidence was introduced, outside of J.M.'s testimony, to show that J.M. was charged with truancy or that if such a charge was brought, whether this incident was the basis for the charge. J.M. further argues that but for the driver allowing A.C. to exit the bus, she would not have gone missing for three days. However, in her brief she asserts that the School Board is responsible only for damages attributable to the period between the time she found out her daughter was not at school and the end of the school day.

"To prevail in tort, Louisiana law requires proving five separate elements, to wit: (1) duty; (2) breach of duty; (3) cause-in-fact; (4) scope of liability or protection; and (5) damages." *Frederick v. Vermilion Parish Sch. Bd.*, 00-382, p. 3 (La.App. 3 Cir. 10/18/00), 772 So.2d 208, 212, writ denied, 00-3171 (La.1/12/01), 781 So.2d 561 (footnotes omitted).

4

The trial court concluded that the bus driver's action, while a breach of her duty, was not a cause-in-fact of the harm to Plaintiffs.

As observed by the Supreme Court in *Hill v. Lundin & Associates, Inc.*, 260 La. 542, 256 So.2d 620 (1972):

. . . .

"Cause" in legal cause demands an inquiry into whether a legal standard of care exists and requires delving into policies for and against extending the asserted legal standard of care to protect the particular plaintiff against the particular harm. (Citations omitted). Moreover, whereas the question of cause-in-fact involves a factual determination, the determination of legal cause involves a purely legal question. (Citation omitted).

Every negligence case must be decided on its own facts and circumstances. *Roberts v. Benoit*, 605 So.2d 1032 (La.1991). In some instances a risk may not be found within the scope of a duty where the circumstances of that particular injury to that plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty. *See Hill v. Lundin & Associates, Inc.*, 260 La. 542, 256 So.2d 620 (1972).

We are mindful that foreseeability, as the determining test, is neither always reliable nor the only criterion for comparing the relationship between a duty and a risk. Some risks that arise because of a defendant's conduct are not within the scope of the duty owed to a particular plaintiff simply because they are unforeseeable. The ease of association of the injury with the rule of conduct that is urged, however, is the proper inquiry. *Hill, supra*. Nevertheless, the extent of protection owed a particular plaintiff is determined on a case-to-case basis to avoid making a defendant an insurer of all persons against all harms. (Citation omitted).

*Jones v. Gaines*, 43,049 p. 18-19 (La.App. 2 Cir. 3/5/08), 978 So.2d 522, 532-33, *writ denied*, 08-0752 (La. 6/20/08), 983 So.2d 1273.

In this case, we conclude that while the conduct of the bus driver was a breach of her duty, the risk that arose was not within the scope of the duty because of lack of forseeability. The events following the breach of the duty are not easily associated with the bus driver's breach of duty. Accordingly, we find no error in the trial court's

decision to dismiss Plaintiff's claims. Therefore, we will not reverse the judgment of the trial court.

## CONCLUSION

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Plaintiff-Appellant, J.M.

**AFFIRMED.**

J.M., INDIVIDUALLY AND ON BEHALF OF HER MINOR DAUGHTER,
A.C.

VERSUS

ACADIA PARISH SCHOOL BOARD, JANE DOE, STEVE DUPLECHIN, AND
ABC INSURANCE COMPANY

THIBODEAUX, Chief Judge, dissenting.

The trial court determined that the School Board's conduct was neither a cause-in-fact nor a legal cause of J.M.'s injuries. While the majority asserts that this is a cause-in-fact case, it confuses cause-in-fact with legal cause because the jurisprudence on which it relies focuses on legal cause.

Unquestionably, the School Board had a legal duty which was breached in this case. J.M.'s worry and consternation over her daughter's whereabouts would not have happened if the bus driver had not imprudently allowed her minor daughter to exit the bus. Many parties are to blame in this case, not the least of which are A.C. and her sister. Nonetheless, when there are many concurrent causes leading to injury, the question that must be asked is whether one of the causes was a substantial factor in bringing about the harm. *See Daye v. General Motors Corp.*, 97-1653 (La. 9/9/98), 720 So.2d 654. Given the factual circumstances of this case, I conclude that the School Board's conduct was a substantial factor in bringing about the harm caused to J.M.

We must next determine whether the School Board's breach of its duty extends to protecting J.M. against the risk of harm which she suffered. *Hill v. Lundin & Assoc.*, 260 La. 542, 256 So.2d 620 (1972). Did the School Board's duty and breach of its duty include within the scope of that protection the risk that J.M. would be criminally charged with truancy and the risk that she would be emotionally affected by ignorance of her daughter's whereabouts? I think so. Was there an ease of association between the risk that this harm would occur to J.M. and the legal duty which was breached? *See Lazard v. Foti*, 02-2888 (La. 10/21/03), 859 So.2d 656. Again, I think so.

The majority makes reference also to the lack of evidence showing that J.M. was charged with truancy or the relationship of this incident to this charge. However, there was nothing to contradict J.M.'s testimony on this point. Nor was she found not credible by the trial court. There is no sound reason for the rejection of J.M.'s testimony. Assuming, arguendo, that the majority's position is a valid one, there is no dispute about the fact that J.M. was emotionally troubled by her daughter's absence. The record demonstrates and common sense dictates this observation.

For the foregoing reasons, I would find the School Board liable for the injuries suffered by J.M.

2