DREW, J.
 

 h Plaintiff, BL, individually and on behalf of her minor child, KKG, appeals a summary judgment which dismissed her negligence claim against the Caddo Parish School Board (“CPSB”). We affirm.
 

 FACTS
 

 In April of 1992, BL gave birth to KKG, who was born 24 weeks before term, with attendant complications associated with his prematurity. KKG suffers learning disabilities, particularly in math and reading.
 

 At age 14, BL enrolled KKG at Caddo Learning Center (“CLC”) for special education classes. Also in attendance at CLC was another 14-year-old student, LNG, who had an extensive disciplinary record.
 

 On October 19, 2006, as was their standard practice, KKG and LNG rode home on a school bus driven by Louis Wilkerson. As usual, they were discharged at the same bus stop. LNG invited KKG to his house so that the boys could exchange video games. KKG accepted the invitation and walked with LNG to his home. After arriving, LNG told KKG he was mistaken and that the video games were at his aunt’s house. On the walk to his aunt’s house, LNG threatened to hit KKG with a brick if he did not do as he was told. LNG then sexually assaulted KKG. Afterwards, KKG ran to his grandmother’s house to tell her of his victimization. The police were called. A rape examination revealed a positive match for LNG’s DNA.
 

 LNG was arrested and adjudicated a delinquent in juvenile court for his conduct.
 

 BL sued CPSB, alleging that had it adequately supervised KKG, the assault could have been prevented. CPSB filed a motion for summary | ¡judgment arguing that its duty and scope of supervision did not extend to criminal acts occurring off campus and after regular school hours.
 

 The trial court asked the parties to particularly address the issue of KKG’s mental status so that it might determine whether CPSB owed KKG a heightened level of supervision. After the parties addressed the issue, the court found no genuine issue of material fact and granted CPSB’s motion.
 

 BL has appealed the trial court’s finding that CPSB owed KKG neither the duty of supervision to protect him from this assault nor a heightened duty of supervision due to his mental situation.
 

 DISCUSSION
 

 Our law on the review of summary judgments is well settled.
 
 [1]
 

 
 *460
 

 Duty to prevent off-campus criminal assault
 

 BL first argues on appeal that CPSB breached its duty of supervision when it failed to prevent the off-campus assault on KKG.
 

 LA school board, through its agents and teachers, owes a duty of reasonable supervision over students.
 
 Wallmuth v. Rapides Parish School Bd.,
 
 2001-1779 (La.4/3/02), 813 So.2d 341.
 

 The school board is not the insurer of the safety of the children, and constant supervision of all students is neither possible nor required.
 
 S.J. v. Lafayette Parish School Bd.,
 
 2009-2195 (La.7/6/10), 41 So.3d 1119.
 

 The liability of the school board and its employees for injuries to students exists only when the school board has actual custody of the students entrusted to their care.
 
 Cavalier v. Ward,
 
 97-1927 (La.App.1st Cir.9/25/98), 723 So.2d 480,
 
 writ denied,
 
 98-2615 (La.12/11/98), 729 So.2d 1047.
 

 School boards are required to exercise and maintain only the supervision that is expected of a reasonable person under the circumstances of the particular case.
 
 Rambo v. Webster Parish School Bd.,
 
 32,-447 (La.App.2d Cir.10/27/99), 745 So.2d 770,
 
 writ denied,
 
 1999-3620 (La.2/18/00), 754 So.2d 971.
 

 In his deposition, KKG gave contradicting statements about previous threats made to him by LNG. At one point he claimed that, prior to the assault, he told his assistant principal that LNG made sexual gestures toward him, but he also said that LNG had never previously threatened him. KKG admitted never feeling intimidated by LNG.
 

 Although BL emailed CLC’s principal about disruptions on KKG’s school bus, she admitted that she never explicitly mentioned LNG’s name. In addition, BL claimed to have spoken with Wilkerson, the bus driver,J^about LNG’s behavior. She never expressed concerns, however, about any aggressive sexual threats made to her son. Wilkerson saw that the two boys were amicable to one another on the bus ride on the day of the crime. We note that KKG went voluntarily with LNG to his house.
 

 LNG’s behavioral history included numerous counts of profane language, willful disobedience, leaving school without permission, and fighting. However, none of the 60 reported offenses involved sexually aggressive behavior.
 

 Even assuming that CPSB was aware or should have been aware of LNG’s disturbing behavioral issues, the location of the attack remains undisputed. Based on our
 
 de novo
 
 review of this record, we conclude that BL will be unable to satisfy her burden of proof at trial because the CPSB did not owe a duty to KKG under these partic
 
 *461
 
 ular facts. This unfortunate incident occurred sometime after these boys were discharged from the bus at their regular stop. KKG left the school bus, went to his attacker’s home, and then was accompanying his attacker toward another destination when he was victimized. When they left school premises, the school board’s duty to supervise had ceased.
 

 Heightened duty of supervision
 

 BL next argues that the trial court erred in finding that CPSB did not owe KKG a heightened duty of supervision due to his mental acuity.
 

 The supervision required of a school board is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances.
 
 Wallmuth, supra.
 

 | .^Pamela Baker, Director of Special Education Services for the Caddo Parish school system, stated in her affidavit that KKG enrolled in a remediation program at Alexandria Learning Center (“ALC”), where Baker was the principal. She accepted KKG in the program not because he qualified as a special education student, but because his poor math and reading skills put him at risk of dropping out of school. Within two years of enrollment, KKG made up three grade levels. Based on his academic progress, as well as his mental capacity and social behavior during his time at ALC, Baker believed KKG would neither require nor qualify for special education services beyond Section 504
 
 [2]
 
 classes.
 

 This record does not support BL’s assertion that KKG had a mental disability which would entitle him to a heightened duty of supervision by CPSB. Though BL claimed in her deposition that numerous doctors had treated her son for his neurological problems, this record contains no expert medical testimony in corroboration of her theory that CPSB owed a heightened duty of supervision to the young man.
 

 CONCLUSION
 

 The duty owed by CPSB to protect KKG did not extend to a sexual assault committed after the victim and assailant had been discharged from school for the day and which took place away from the school campus. At the cost of BL, the summary judgment is AFFIRMED.
 

 [1]
 

 . A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant.
 
 Samaha v. Rau,
 
 2007-1726 (La.2/26/08), 977 So.2d 880. A summary judgment is reviewed on appeal
 
 de novo,
 
 with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate;
 
 i.e.,
 
 whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.
 
 Id.
 
 A motion for summary judgment will be granted if the pleadings, depositions, answers, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material
 
 *460
 
 fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
 

 The burden of proof on a motion for summary judgment is set forth in La. C.C.P. art. 966(C)(2):
 

 The burden of proof remains with the mov-ant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
 

 [2]
 

 .
 
 See
 
 45 C.F.R. § 84.3