BROWN, Chief Judge.
| plaintiff, Faye Huey, individually and as tutrix of the minor LaShaun Latrice Thompson, filed suit against defendant, Caldwell Parish School Board (“CPSB”), seeking damages arising out of her 16-year-old daughter’s sexual contact off campus with an adult male non-student.[1] Plaintiff now appeals from a trial court judgment granting defendant’s motion for summary judgment and dismissing her claims. For the reasons set forth herein, we AFFIRM.

Facts and Procedural History

In Spring 2006, LaShaun was enrolled at Caldwell Parish High School (“CHS”) and rode to and from school on a bus driven by W.L. Rush, who had been employed as a bus driver by CPSB for 36 years. Plaintiff alleged that on three occasions, March 12, 2006, April 4, 2006, and May 3, 2006, La-Shaun was allowed to disembark from the bus before reaching school so that she could attend a medical appointment. Defendant notes that March 12, 2006, was a Saturday. Also, the forged note from La-Shaun was dated May 4, 2006, not May 3, 2006, as one of the days she was dropped off for an alleged doctor’s appointment.
There were, however, no doctor’s appointments. LaShaun admitted to intentionally lying to Rush in order to meet with Gary Thomas, a 28-year-old male with a criminal history. Each time, after Rush dropped her off at the health unit or hospital, LaShaun was picked up by Thomas, who drove |2them to his sister’s apartment where they had intercourse. After these rendezvous, Thomas would drop La- *926 Shaun off at school, usually around lunch. In April 2006, LaShaun became aware that she was pregnant with Thomas’s child and was made to reveal the relationship with Thomas to her mother, who then contacted the police. On July 30, 2007, Thomas pled guilty to violating La. R.S. 14:80, felony carnal knowledge of a juvenile. Thomas received a sentence of ten years, with three years suspended and five years of supervised probation.
It is not disputed that LaShaun knowingly contrived false excuses in order to convince Rush to allow her to exit the bus before arriving at school in the morning. On one occasion in May 2006, LaShaun forged a note from plaintiff asking that she be let off at the local health unit for a doctor’s appointment. In April 2006, she asked to be let off for another doctor’s appointment, but Rush asked to speak with her mother. LaShaun used a cellular phone to call a friend who pretended to be her mother and gave permission for her to be dropped off for the appointment. As stated in the record, on both of these occasions, LaShaun was already pregnant.
LaShaun testified that she met Thomas around the beginning of February 2006. The only authority figure who knew about Thomas was plaintiff. Prior to the dates subject to this lawsuit, plaintiff learned from others in town that Thomas was attempting to pursue LaShaun whenever she walked home from an after-school tutoring program. Plaintiff confronted Thomas, along with his mother, demanding that he stay away from LaShaun due to her age. Following her confrontation with Thomas, liiShe pulled LaShaun out of the after-school program. Plaintiff did not inform anyone at the school of the issue, reasoning: “My deal was if I told him in front of his mom and everything, you know, that should have settled it.”
Additionally, plaintiff did not disclose to anyone at CHS that LaShaun had to leave a previous school due to inappropriate sexual activity with another student on school grounds. Plaintiff testified that she felt this information was “privileged” and that “I told them what I thought they needed to know about, her attention deficit and her disruptive behavior and those kinds of things.”
On March 7, 2007, plaintiff filed suit against CPSB. Specifically, she argued that Rush breached the duty of care owed to LaShaun by dropping her off at a location other than her home or school. Plaintiff also alleged that there was in place a school policy mandating that before a student is allowed to get off a bus at a stop other than her own, the school’s principal must confirm written permission from a parent or guardian. Had this policy not been violated, plaintiff claimed that La-Shaun would not have had sexual contact with Thomas.
Defendant filed a motion for summary judgment on June 25, 2010, arguing that there was no formal policy governing bus activity at the time of these events, that the risk of the harm that occurred was not foreseeable, and that Rush substantially complied with school board policies, even if there was an alleged technical violation.
On February 7, 2012, the trial court rendered written reasons for | judgment, and on March 7, 2012, the court signed a judgment granting defendant’s motion. The court found that “there was no written policy governing students exiting a school bus at the time this event occurred.” The trial court also found that plaintiff could not prove that the injuries suffered by LaShaun were foreseeable or that CPSB’s conduct was the cause of her damages. The court found it noteworthy that the relationship between Thomas and La-Shaun began before the first incident in *927 volving the school bus and that LaShaun knowingly planned to deceive Rush on each occasion. Plaintiff, thereafter, filed this timely appeal.

Discussion

Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Argonaut Great Cent. Ins. Co. v. Hammett, 44,308 (La.App.2d Cir.06/08/09), 13 So.3d 1209, writ denied, 09-1491 (La.10/02/09), 18 So.3d 122. Summary judgments are favored under Louisiana law; however, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and doubt must be resolved in the opponent’s favor. La. C.C.P. 966(A)(2); Id.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law.[2] La. C.C.P art. 966(B). A | ¡¡genuine issue of material fact is one as to which reasonable persons could disagree. Argonaut Great Cent. Ins. Co., supra.
Louisiana courts have adopted a duty-risk analysis in determining whether liability for negligence exists under the facts of a particular case. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.04/03/02), 816 So.2d 270. Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to an appropriate standard of care; (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries; (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries, and (5) actual damages. La. C.C. art. 2315; Id. at 275-76; Lowery v. Wal-Mart Stores, Inc., 42,465 (La.App.2d Cir.09/19/07), 965 So.2d 980. The plaintiffs failure to prove any of the elements of the duty-risk analysis results in a determination of no liability. Carroll v. State Farm Fire & Cas. Co., 31,652 (La.App.2d Cir.05/05/99), 732 So.2d 1263.
The duty of a school board to its students is well settled. A school board, through its agents and teachers, owes a duty of reasonable supervision over students. La. C.C. art. 2320; Wallmuth v. Rapides Parish School Bd., 01-1779 (La.04/03/02), 813 So.2d 341; Adams v. Caddo Parish School Bd., 25,370 (La.App.2d Cir.01/19/94), 631 So.2d 70, writ denied, 94-684 (La.04/29/94), 637 So.2d 466. However, a school board is not the insurer of the safety of children, and con *928 stant supervision of each student is neither possible or required. S.J. v. Lafayette Parish School Bd., 09-2195 (La.07/06/10), 41 So.3d 1119; BL v. Caddo Parish School Bd., 46,557 (La.App.2d Cir.09/21/11), 73 So.3d 458. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. Wallmuth, supra. In essence, when the school accepts custody, it stands in the shoes of the parent regarding the authority to control the student while there; in turn, it must also assume the responsibility to supervise. Frederick v. Vermilion Parish School Bd., 00-382 (La.App. 3d Cir.10/18/00), 772 So.2d 208, writ denied, 00-3171 (La.01/12/01), 781 So.2d 561.
The liability of the school board and its employees for injuries to students exists only when the school board has actual custody of the students entrusted to their care. BL, supra at 460. In this case, LaShaun was aboard a CPSB school bus on her way to school, in the care of defendant, when she was allowed to exit at the health unit or hospital.
The trial court correctly identified foreseeability as key to the negligence analysis for determining the liability of CPSB for the off-campus criminal actions of Thomas. Most important, in this case, is whether the scope of the duty encompassed the risk of the harm which occurred. This court has' laid out the proper framework for examining whether a risk falls within the scope of a duty owed:
|7The scope of protection (legal cause) inquiry is a question that determines whether the particular risk falls within the scope of that duty. Rules of conduct are designed to protect some persons under some circumstances against some risks. The scope of protection inquiry asks whether the enunciated rules extends to or is intended to protect this plaintiff from this type of harm arising in this manner. In determining the limitation to be placed on liability for defendant’s substandard conduct, the proper inquiry is often how easily the risk of injury to the plaintiff can be associated with the duty sought to be enforced. The extent of the protection owed to a particular plaintiff is determined on a case by case basis to avoid making a defendant an insurer of all persons against all harms. The fact that a precise manner of harm is not anticipated does not destroy the scope of the duty when the general manner of the harm is foreseeable. (Internal citations omitted).
Thomas v. Sisters of Charity of the Incarnate Word, 38,170 (La.App 2d Cir. 03/19/04), 870 So.2d 390, 398, writ denied, 04-1403 (La.09/24/04), 882 So.2d 1132. Or as colloquially stated in the dissent:
Nevertheless, because substandard conduct does not render the actor liable for all consequences spiraling outward until the end of time, the concept of legal cause [scope of the duty] in the duty-risk analysis is necessary to cut off liability at some point. Roberts v. Benoit, 605 So.2d 1032, 1052 (La.1991). Legal cause considers whether “too much else has intervened-time, space, people, and bizarreness.” Id. at 1058. A risk may be found not within the scope of a duty where the circumstances of that injury to the plaintiff could not reasonably be foreseen or anticipated, because there was no ease of association between the risk of that injury and the legal duty. Lazard v. Foti, 02-2888 (La.10/21/03), 859 So.2d 656, 661.
Caraway, J., dissenting, Thomas, 870 So.2d at 400-401.
Defendant notes that similar to the facts in this case, in J.M v. Acadia Parish School Bd., 08-1377 (La.App. 3d Cir.04/01/09), 7 So.3d 150, the Third Cir *929 cuit addressed a case in which a high school student was allowed to disembark from a school bus before reaching school without written permission, in violation of school policy. After leaving the bus, the student met with her 18-year-old boyfriend, engaged in sexual relations with him, |8and then hid from her mother for several days. While the court acknowledged that the bus driver breached her duty, it also held that the risk of the ensuing events was not foreseeable or easily associated with the breach. Id.
Plaintiff, while not addressing the implications of the holding in J.M., supra, urges the application of Agnor v. Caddo Parish School Bd., 41,224 (La.App.2d Cir.08/01/06), 936 So.2d 865, in which this court affirmed a trial court judgment finding the defendant school board 75% liable for injuries sustained by a third grader who slipped on a wet school bathroom floor and stabbed herself in the eye with a pencil as she fell to the ground.
The Louisiana Supreme Court, however, has cautioned that the extent of the duty of reasonable supervision depends on the age the student. S.J., 41 So.3d at 1127.[3] Other cases show that the age of the student and other attendant circumstances do affect foreseeability and thus also the scope of the duty of reasonable supervision. In Frederick, supra, a high school failed to provide proper notice that band practice had been cancelled causing a student to miss her bus home. After attempting to contact her parents, the student instead took a ride with four male students, who then drove to a remote sugar cane field and violently raped her. The Third Circuit affirmed a grant of summary judgment in favor of the school board, holding that the student’s age, the lack of evidence to the student and the |9school that a danger existed, and the school board’s lack of control over students while off campus were pivotal factors in finding that the school’s action was not the legal cause of the injuries suffered. Id.
In Williams v. Orleans Parish School Bd., 07-0917 (La.App. 4th Cir.01/23/08), 2008 WL 399353, the Fourth Circuit affirmed a trial court judgment finding no liability on the part of the defendant school board, where a high school student was stabbed by a classmate after leaving campus without authorization during the school day with group of around 25 other students. The school principal and school security officer ordered the students not to leave, but took no action when the students did not heed their directions. While out of school, the victimized student was fatally stabbed by another student. The court held that this case was similar to Frederick, supra, because the injury was not foreseeable to the school or the teenaged student who joined the walk-out. Id.
In the instant case, LaShaun was 16 years old when the incidents began; she would turn 17 at the end of May 2006. She started seeing Thomas in February 2006 and was pregnant by April 2006. The two incidents involving the school bus occurred in April and May 2006. In each case the bus driver inquired about La-Shaun’s reasons for getting off at the health unit and doctor’s office. LaShaun gave the driver a forged permission slip and called a friend on her cell phone who pretended to be LaShaun’s mother. She *930 admits to contriving the excuses in order to meet Thomas. It is difficult to locate any evidence in the record showing that the risk of this sort of injury was foreseeable to CPSB. LaShaun admitted that |inno one at CHS, other than a couple of select friends, knew about her actions with Thomas. LaShaun’s mother, who knew of the relationship with Thomas, did not inform the school of her daughter’s improper friendship with Thomas or her concerns about the relationship.
Plaintiff reiterates that LaShaun could not consent to the sexual activity with Thomas, pursuant to La. R.S. 14:80. However, this does not mean that LaShaun failed to understand that her actions in skipping school and clandestinely meeting with Thomas put her in danger. LaShaun knew that she was not supposed to get on or off of the bus anywhere other than at home or school.[4] She was, according to her testimony, a capable student while at CHS.[5] LaShaun devised a plan to meet Thomas and went with him to his sister’s apartment on multiple occasions. As a 16-year-old, she was aware of the nature of her actions and that her mother and school authorities would not approve.
Perhaps more importantly, there is no evidence or analysis in the record that anyone at the school would have been able to foresee this type of injury. Nor was it foreseeable to Rush when he dropped her off at the health unit or doctor’s office that she would instead wait until he left and then get into a car with Thomas and leave.[6] Plaintiffs argument that the existence of In the alleged policy means that any injury suffered while not at school is the fault of the school board is without merit. Therefore, defendant was not the legal cause of LaShaun’s injuries.
Substandard conduct does not render the actor liable for all consequences spiraling outward until the end of time; the concept of legal cause is necessary to cut off liability at some point. In this case, too much has intervened, and this risk is not within the scope of defendant’s duty. We hold that the trial court’s grant of summary judgment was not in error.

Conclusion

For reasons set forth above, the judgment of the trial court is affirmed. Cost of appeal of are assessed against plaintiff.
AFFIRMED.

. While plaintiff is not LaShaun's biological mother, she has raised LaShaun since birth under a temporary consent custody order. We note that despite LaShaun being a minor when these sexual crimes occurred, plaintiff and defendant as well as the trial court below reference her by name. La. R.S. 46:1844(W)(l)(a) provides that, "[t]he confidentiality of the identity of the victim who at the time of the commission of the offense is a minor under eighteen years of age or the victim of a sex offense may be waived by the victim.”

. The burden of proof on a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him or her to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidential burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
The adverse party may not rest on the mere allegations or denials of his pleadings in response to a properly made and supported motion for summary judgment, rather, his response, by affidavits or otherwise, must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment shall be rendered against him, if appropriate. La. C.C.P. art. 967(B).

. In that case, the supreme court, after previously reversing a grant of summary judgment, reinstated a trial court judgment, holding that the defendant school board was not liable for a rape suffered by a student who walked home following an after-school disciplinary program. The school and victim failed to notify the parent of the student's involvement in the program. The court held that the trial court did not err in finding that the student intended to walk home and the school satisfied the duty of reasonable supervision by providing access to a late bus and a telephone to contact a family member.

. Prior to the incidents subject to this suit, Rush informed plaintiff that LaShaun had missed the bus once or twice in a week. Plaintiff discovered that LaShaun had instead taken a ride with some other students in her neighborhood. Upon learning this, plaintiff contacted the school board, which made improvements to her driveway so the school bus could pick LaShaun up at her door rather than at the end of the drive.

. LaShaun graduated with an approximate 3.0 grade point average and attends Delta Community College in Monroe, LA.

. Compare, D.C. v. St. Landry Parish School Bd., 00-01304 (La.App.3d Cir.03/07/01), 802 So.2d 19, writ denied, 01-0981 (La.05/25/01), 793 So.2d 169. (Affirmed a judgment finding the defendant school board was liable where a 12-year-old middle school student was raped while walking home through a part of town known to be dangerous and frequented by criminals.) The student violated the school uniform policy and was directed to obtain the proper attire from her home. The school secretary allowed the student to check herself out of school, in clear violation of the school’s policy, and walk home where, along the way, she was sexually assaulted. Important to the court’s rationale was the young age of the student, the fact that the school official directly violated the school's own policy and that the danger of the neighborhood through which she had to walk was well known. Id.